[Crim. No. 7101. In Bank. Sept. 27, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. ALBERT LESSARD, Defendant and Appellant.

Albert Lessard, in pro. per., Thomas M. Griffin, under appointment by the Supreme Court, and Richard J. Tuckerman for Defendant and Appellant.

Stanley Mosk, Attorney General, John S. McInerny and Edward P. O'Brien, Deputy Attorneys General, for Plaintiff and Respondent.

WHITE, J.—A jury found defendant guilty of the first degree murder of Joseph Mazeski and fixed the penalty at death. Defendant admitted two prior felony convictions. The trial court denied defendant's motion for a new trial and entered judgment on the verdict. The appeal from the judgment is automatic. (Pen. Code, § 1239, subd. (b).) ▆▆ Although the order denying the motion for a new trial is not appealable, we are nevertheless authorized to review the denial in this proceeding. (Pen. Code, § 1237, as amended Stats. 1961, ch. 850, § 5, p. 2229.)

With regard to the factual background surrounding this prosecution, the record reveals that on June 15, 1959, the deceased registered at the Travel Lodge Motel in San Francisco. He had in his possession approximately $800, the proceeds of a check for his summer pay as a school teacher. On the afternoon of June 16 he met defendant in a tavern directly across the street from deceased's motel. The two had drinks and some conversation. Thereafter defendant left the tavern shortly before 6 p. m. and returned in approximately 15 minutes. The latter accompanied by the deceased then left the tavern at approximately 6 :30 p. m. The deceased's body was found in his motel room the following morning. Death was caused by knife wounds in his chest and back areas. Other wounds on the deceased's arms and hands were described as of a type inflicted when one attempts to ward off a knife attack.

Defendant's fingerprints were found throughout the deceased's motel room, and he admits to having entered the room after leaving the tavern. In addition, defendant's finger-

prints were found on a knife in a display case at a restaurant supply store located in the same neighborhood as the motel and tavern. The owner of the store testified that on the afternoon in question at approximately 6 p. m. a man who might have been the defendant entered his establishment and purchased a boning knife. Before making his selection, however, the customer examined another knife which was returned to the display case. When the owner heard of the homicide he informed the police of the purchase, and it was the knife remaining in the display case on which defendant's fingerprints were found. The murder weapon was never identified or recovered.

The latter admitted meeting the deceased at the tavern on the afternoon of June 16. He testified that after leaving the tavern they drove to another bar in the victim's automobile and then returned to the motel room; that deceased wanted to freshen up and while he was engaged in taking a shower defendant noticed deceased's wallet, removed it from the latter's clothing and quietly left. It is thus conceded that defendant committed a theft of personal possessions. By way of affirmative defense, defendant offered evidence that he boarded a Greyhound bus to Seattle, claiming that such bus left San Francisco at 9:30 p. m. Evidence was submitted which, if believed, could have established that hour as defendant's departure time. His purpose in establishing such time was to demonstrate that he could not have been in San Francisco at the time of decedent's death as testified to by witnesses for the prosecution. In this connection defendant asserts that the coroner's records indicate that death occurred not before 11 p. m. on June 16. This conclusion is drawn from a statement contained in the coroner's report that "deceased had apparently been dead from 10 to 12 hours when found." However, the coroner testified that the time of death could have been within a period preceding the discovery of the body by as much as 14 hours, which would have made it possible for defendant to have committed the crime and to have taken the bus which he claims to have boarded. The coroner admitted on the stand that the 10 to 12 hour estimate was a "best" estimate, but testified that unknown factors could cause considerable error in the estimate. Other than the admitted theft the defendant advanced no theory, either expressly or inferentially through evidence produced by him or the prosecution, which might have established a criminal act. His entire

defense was directed to establishing that he was in no way connected with the homicide.

As his first ground for reversal defendant contends that the clerk of the trial court failed to poll the entire jury when requested to do so by his counsel, following return of the guilty verdict. (Pen. Code, § 1163.) In response to the request of defendant the court ordered the jury to be severally polled. It appears from the transcript as originally prepared that 11 jurors were polled, all answering in the affirmative to the question ". . ., is that your verdict?" No request was made by counsel for defendant for further polling and the oversight, if any, was not otherwise called to the court's attention. Moreover, a duly verified correction to the reporter's transcript shows that the twelfth juror was also independently polled and that he too stated that the announced verdict was also his individual verdict. The verity of the corrected transcript is not put in issue.

The polling of the jury is a right available only upon the request of either party. (Pen. Code, § 1163.) A failure to make a proper request imposes no burden upon the court to poll the jury, nor in the absence of such request does a failure to so poll constitute a denial of a constitutional right.

Where a jury is incompletely polled and no request is made for correcting the error, such further polling may be deemed waived by defendant, who cannot sit idly by and then claim error on appeal when the inadvertence could have readily been corrected upon his merely directing the attention of the court thereto. In any event, the record fails to reveal an incomplete polling in the present instance and no grounds for reversal are apparent.

Defendant next assigns as error the refusal of the trial court to instruct the jury on the elements of murder of the second degree. In this connection the court instructed: "Although there are two degrees of murder, the evidence in this case is such that either the defendant is innocent of the charge of murder or he is guilty of murder in the first degree."

While an unbroken line of decisions holds that it is the duty of the court to instruct on every theory of the case finding support in the evidence (*People* v. *Carnine,* 41 Cal.2d 384, 390 [260 P.2d 16]; *People* v. *Carmen,* 36 Cal.2d 768, 773-774 [228 P.2d 281]), in the case now engaging our attention, however, the record is barren of any evidence that would support a verdict of murder of the second degree. The only theory advanced in the case at bar was that of murder in the first

degree predicated either upon premeditation evidenced by defendant's purchase of the boning knife after meeting deceased or killing him in the course of a robbery. (Pen. Code, § 189.) As stated, the only theory advanced by defendant is that while a homicide was committed he was not the perpetrator thereof; that someone else purchased the knife and that someone other than he stabbed the decedent to death after defendant concededly removed the victim's personal possessions and fled. It therefore follows that if the jury was convinced beyond a reasonable doubt that defendant committed the homicide there was no alternative under existing law other than to find that the murder was of the first degree for the evidentiary features of the instant case are of such a nature as to warrant only such a finding as to the degree of the offense. (See *People* v. *Turville,* 51 Cal.2d 620, 633 [335 P.2d 678].) Defendant's reliance on the cases of *People* v. *Carmine, supra,* 41 Cal.2d 384; *People* v. *Carmen, supra,* 36 Cal.2d 768; *People* v. *Bender,* 27 Cal.2d 164 [163 P.2d 8]; *People* v. *Burns,* 88 Cal.App.2d 867 [200 P.2d 134] (cf. *People* v. *Ah Lee,* 60 Cal. 85), is unavailing for the reason that in the cited cases, unlike the one at bar, there was some evidence which tended to show such a state of facts as might bring the crime within the grade of second degree murder or of a lesser offense included within the crime charged. ''[W]here the facts impel a conviction of murder of the first degree . . . and do not admit upon any view of the evidence of a finding other than of murder of the first degree, there is no occasion whatsoever to give instructions as to the differences between the degrees of murder.'' (*People* v. *Bernard,* 28 Cal.2d 207, 214 [169 P.2d 636]; see also *People* v. *Peterson,* 29 Cal.2d 69 [173 P.2d 11]; *People* v. *Honeycutt,* 29 Cal.2d 52 [172 P.2d 698]; *People* v. *Dorman,* 28 Cal.2d 846 [172 P.2d 686].) And in *People* v. *Watts,* 198 Cal. 776 [247 P. 884], we said at page 793: ''In a criminal case instructions are always to be given with reference to the facts proved before the jury. Accordingly, it is the established rule that on the trial of a person charged with murder it is proper to refuse to give an instruction as to a lesser degree than that of murder in the first degree, or as to a lesser offense included within the crime charged, if the evidence is of such a nature as to warrant only a verdict of first degree murder, in the event that the accused is guilty at all.'' (See also *People* v. *Dye,* 130 Cal.App. 522 [20 P.2d 358].)

It is next contended by defendant that the jurors

were guilty of misconduct in receiving evidence out of court and in discussing the case among themselves prior to its submission to them. This contention formed a basis for the motion for a new trial. (Pen. Code, § 1181, subd. 2.) An affidavit of a juror who was excused because of illness before the matter was submitted to the jury states that another juror read an inaccurate account of the trial in a newspaper, discussed the same with other jurors and based her premature opinion of defendant's guilt upon such newspaper article. It is alleged in the same affidavit that the jurors otherwise formed premature opinions of the defendant's guilt.

■■■ There can be no doubt that the reading by jurors of newspaper accounts of a trial in which they are engaged amounts to a violation of their duty and obligation and if such newspaper accounts would be at all likely to influence jurors in the performance of duty, the act would constitute a ground for a motion for a new trial. Jurors in a criminal action subscribe to an oath to render a true verdict according to the evidence. (Code Civ. Proc., § 604.) ■■■ Under the oath which they take they cannot without a violation thereof receive impressions from any other source. However, the crucial question is whether it can be proved as a fact or may be presumed as a conclusion of law that the verdict of the jury may have been influenced by information or impressions received from sources outside of the evidence in the case.

■■■ In the case with which we are now concerned the affiant did not sit with the jury during its deliberations, and manifestly any statement in her affidavit as to the manner in which the jurors arrived at a verdict after submission of the cause to them amounts only to conjecture and speculation on the part of affiant. Moreover, in opposition to defendant's motion for a new trial an affidavit of the foreman of the jury was filed. It is stated therein that he did not hear any juror discuss the guilt of the defendant before deliberations, nor did he hear any expressions of prejudice. He states further that the jury deliberated only upon the evidence presented at the trial. We are satisfied no error was committed by the trial judge under the facts here present in refusing to indulge the assumption that the jurors in this case violated their oaths and disregarded his admonitions given throughout the trial and emphasized in his final instructions to them wherein he said: "You are to be governed *solely by the evidence* introduced in this trial and the law as stated to you by me. The law forbids you to be governed by . . . conjecture . . . prejudice

. . . public opinion or public feeling. . . . Both the people and the defendant have the right to demand, and they do demand and expect, that you will conscientiously and dispassionately *consider and weigh* the evidence . . and that you will reach a just verdict, regardless of what the consequences of such verdict may be.'' (Emphasis added.) In any event, defendant fails to demonstrate the abuse of discretion necessary for the reversal of an order denying a motion for a new trial upon consideration of opposing affidavits. (*People* v. *Cox,* 174 Cal. App.2d 30, 41 [344 P.2d 399].)

A further question, although dictum in view of our holding that the motion for a new trial was properly denied on the record, is raised as to the propriety of considering a juror's affidavit for the purpose of impeaching her own verdict (see *People* v. *Sutic,* 41 Cal.2d 483, 495 [261 P.2d 241]), other than to show decision by lot or concealing bias and prejudice by false answers on *voir dire.* (Code Civ. Proc., § 657, subd. 2.) As stated, the juror here involved did not participate in the verdict and it might be argued that she therefore does not seek to impeach her verdict. But the rule should be applicable at least to the extent that she did participate, and beyond the extent of her participation it appears she had no positive knowledge. It has previously been held that dissenting jurors may not impeach their fellow jurors' verdict, although such verdict is not that of the dissenters. (*Watson* v. *Los Angeles Transit Lines,* 157 Cal.App. 2d 112, 116 [320 P.2d 890].) And a statement, which must be considered as dictum appearing in *People* v. *Henderson,* 79 Cal.App.2d 94 [179 P.2d 406], at page 122, limits the impeaching effect of affidavits of jurors who were excused ''to matters not occurring while they were regular jurors.''

Defendant next asserts error in the trial court's ruling that a transcript of the testimony taken at the coroner's inquest was inadmissible. Distinction should be made herein between the coroner's report and the transcript at the inquest. The report, or register, consisting of the business record and conclusions of the coroner, was admitted. (See *Pruett* v. *Burr,* 118 Cal.App.2d 188 [257 P.2d 690].) But the transcript of the testimony given by witnesses at the inquest was not admitted upon the objection of the prosecution that the same was hearsay not falling within any of the exceptions to the hearsay rule. The ruling was correct. As stated in 20 American Jurisprudence, page 866, section 1027, ''. . . a record of a primary fact made by a public official in the per-

formance of official duty is, or may be made by legislation, competent prima facie evidence as to the existence of that fact, *but records of investigations and inquiries conducted either voluntarily or pursuant to requirement of law* by public officers concerning causes and effects, and involving the exercise of judgment and discretion, expressions of opinion, and the making of conclusions, are not admissible in evidence as public records.'' (Emphasis added; see also Code Civ. Proc., §§ 1918, 1920, 1926.)

The transcript, containing the verbatim testimony of witnesses at the coroner's inquest, is not a written or prepared record of the coroner, and defendant has failed to justify its admission under the Uniform Business Records as Evidence Act (Code Civ. Proc., § 1953e), or any other exception to the hearsay rule. When the issue was presented during the trial the judge advised that he would receive the transcript into evidence if counsel for defendant, after research, could justify any ground for its admission. Defense counsel failed to again move for its admission. It further appears that the witnesses who testified at the coroner's inquest also were available and testified at the trial. The trial judge expressly indicated to counsel for defendant that he could use the transcript of testimony taken at the coroner's inquest to impeach the witnesses at the trial, but counsel did not seek to do so. (See *People* v. *Devine,* 44 Cal. 452.)

Defendant finally contends that his attorney improperly advised him as to his testimony, and that defendant was thereby denied a fair trial. In this respect defendant contends, through an affidavit attached to his brief, that he had actually never been in the motel room; that he robbed the deceased of the latter's wallet while it was deposited in the glove compartment of deceased's automobile; that his defense counsel advised him to admit to having been in the motel room in order to make defendant's story more believable; that defendant followed his attorney's advice to his prejudice.

The foregoing contentions were also presented to the trial court on the motion for a new trial. There is nothing in the record which lends support to this current version of the theft of the wallet. The defendant's fingerprints were found in several places in the motel room, and his presence there must be deemed well established. Although he contends that the prints were ''planted'' there, the record shows that the prints were taken and preserved well in advance of the identification

of defendant as the perpetrator of the crime. Moreover, even if defendant had been so advised by his attorney, and again there is no reason to believe that he was, it does not appear that any prejudice resulted therefrom. Whatever the story which defendant gives, there is still abundant, substantial, even though circumstantial, evidence that he committed the homicide. By either story he concedes that he stole the wallet; by either story he is identified as having been in the deceased's company shortly before the latter's death; by either story his fingerprints place him in both the motel room and the store wherein the knife was purchased; and by either story he made a quick departure from San Francisco on the evening of the murder. It should be noted here that the record is replete with inconsistencies in defendant's various accounts of his activities at the times involved, and it appears that expediency dictates the version currently deemed to be of advantage. We find no merit in defendant's last contention.

For the foregoing reasons the judgment should be, and is affirmed.

Gibson, C. J., Traynor, J., Schauer, J., McComb, J., Peters, J., and Tobriner, J., concurred.

Appellant's petition for a rehearing was denied October 24, 1962.