[Crim. No. 13785. Second Dist., Div. Four. Jan. 9, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. RICHARD
GARCIA, Defendant and Appellant.

Alfred V. Contarino, under appointment by the Court of
Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James,
Assistant Attorney General, and Philippe J. Monet, Deputy
Attorney General, for Plaintiff and Respondent.

KINGSLEY, J.—On March 16, 1967, Sergeant Welsch, a narcotic expert of the Los Angeles Police Department, filed an application for the admission of defendant, an alleged narcotic addict, to the Los Angeles County central jail infirmary, pursuant to Welfare and Institutions Code, section 3100.6. On March 17, 1967, Dr. LaVette filed an ''Affidavit of Examination Within 24 Hours'' stating his belief that defendant was addicted to narcotics or in imminent danger of becoming addicted to their use. On March 20, 1967, a petition for commitment of defendant as a narcotic drug addict was filed (Welf. & Inst. Code, § 3100 et seq.) and defendant was ordered to be detained pursuant to Welfare and Institutions Code section 3102. On March 28, 1967, the public defender was appointed to represent defendant. On April 5th and 6th hearing was held with appellant and his counsel present. Dr. Lavelle testified. The court found defendant to be a narcotic drug addict and ordered him committed to the California Rehabilitation Center at Corona.

This is an appeal from the commitment order.

Around 11:15 a.m. on March 16, 1967, Officer Suter, who had extensive experience in the field of narcotics, saw defendant double parked, and the officer put on his red light. Defendant's passenger looked at the officer, walked toward the front of the car, bent over, checked the left front of the vehicle, then hurriedly walked to the rear. The officer approached and the individual quickly walked to the curb and bent over out of sight behind a Volkswagen. The officer heard something drop and he discovered that it was a white bindle with a narcotic kit: a hypodermic needle, eyedropper, spoon and cotton. The individual's eyes were pinpointed, his speech was slurred and he had old tracks and fresh marks on his left arm. The individual was arrested. The officer then approached the driver (the defendant herein) and asked for a driver's license and identification. Defendant had no license or identification. The officer asked defendant to get out of the car and as defendant complied the officer noticed puncture wounds on defendant's arm. Defendant's speech was slurred, his eyes were pinpointed with little or no reaction to light. The officer formed the opinion that defendant was possibly under the influence of some narcotic. Defendant was arrested for violation of Health and Safety Code, section 11500, but was never prosecuted on that charge.

Dr. Lavelle, a physician expert in the field of narcotic drugs, interviewed defendant on March 20, 1967, and defend-

ant had been previously examined by Dr. LaVette three days before. Based upon his interview with defendant, a review of the records of the county jail infirmary and the history and physical examination by Dr. LaVette, Dr. Lavelle was of the opinion that defendant was a narcotic addict. The history and physical examination revealed that defendant had a 20-year history of heroin use, that he had been treated intermittently at the California Rehabilitation Center and that at the time of the examination defendant was slightly depressed, yawning, had lacrimation, runny nose, restlessness and depression. On defendant's left arm there were two separate needle tracks with old and fresh puncture wounds from which it was apparent that the defendant had received 13 injections in less than two weeks. The doctor was of the opinion that defendant was a narcotic addict at the time of commitment to the infirmary.

Defendant's sole contention on appeal[1] is that the *Miranda* rule applies to a commitment pursuant to Welfare and Institutions Code, section 3100 et seq., and that, since the record does not show that he received such warnings, his commitment is invalid.

I

The People argue that, even if a *Miranda* warning was necessary, it was given by the officer at the police station, and there was no need for readvisement of the *Miranda* rights. *People* v. *Sievers* (1967) 255 Cal.App.2d 34, 37-38 [62 Cal. Rptr. 841], held that a person in custody need not be given more than one warning in successive interrogations. However, in the case before us defendant was given the warning in conjunction with a suspected violation of Health and Safety Code, section 11500. The commitment proceedings herein (wherein the record is silent as to whether warnings were given) was under Welfare and Institutions Code, section 3100 et seq., and was a separate and distinct proceeding from the proceeding in which the warnings were given; thus this case is not a situation similar to the successive interrogations in a single procedure as in the *Sievers* case. Furthermore, although defendant Garcia was told in the earlier Health and Safety Code proceeding of his rights in an interview by the police, there is no reason why he should have believed or understood

---

[1]It is admitted, and the record shows, that all of the procedural requirements of the Narcotic Rehabilitation Act were complied with.

those same rights to apply to his discussion with the county jail doctor.

## II

The Attorney General argues that the record does not affirmatively show that the statements as to defendant's usage of narcotics were repeated to the examining physician, and that the reference by the doctor to those statements may have been a mere incorporation of data found by him in the police report. But the doctor does not indicate that he was giving hearsay; his report purports to speak of data acquired by him personally. Under these circumstances, we cannot accept the contention that the trial court was asked to rule on the basis of second degree hearsay. On this record, we must believe that the statements attributed to defendant by the doctor were, in fact, made by defendant directly to him.[2]

## III

Thus, we are faced squarely with the issue: Does *Miranda* require that its warnings be given prior to and as a part of the medical examination required by statute in cases looking toward a narcotic commitment?[3]

A commitment under the Welfare and Institutions Code for narcotics' addiction is a civil proceeding which has treatment, and not punishment, as a major purpose. (*In re De La O* (1963) 59 Cal.2d 128 [28 Cal.Rptr. 489, 378 P.2d 793, 98 A.L.R.2d 705]; see *In re Trummer* (1964) 60 Cal.2d 658, 663 [36 Cal.Rptr. 281, 388 P.2d 177].) However, ". . . police officers who violate the fundamental guarantees in order to apprehend and obtain commitment of narcotic addicts are no less guilty of violating the basic law of the land than officers or other governmental officials who violate the Fourth and Fourteenth Amendments for the purpose of the apprehension

---

[2]We are concerned with the statements contained in Dr. LaVette's report; Dr. Lavelle admittedly relied on those statements in reaching his opinion.

[3]The Attorney General argues that defendant did not object at the trial to the admission of the statements as contained in the doctor's report. But the hearing here was before the decisions in *Specht* v. *Patterson* (1967) 386 U.S. 605 [18 L.Ed.2d 326, 87 S.Ct. 1209], and in *In re Gault* (1967) 387 U.S. 1 [18 L.Ed.2d 527, 87 S.Ct. 1428], and, of course, before that in *People* v. *Moore* (1968) 69 Cal.2d 674 [72 Cal.Rptr. 800, 446 P.2d 800]. It was not until the *Specht* and *Gault* cases that counsel was on notice that the *Miranda* rules might be available in civil cases of this type. Lacking such a warning, the law does not require a trial court objection. (*People* v. *Hillery* (1965) 62 Cal.2d 692 [44 Cal.Rptr. 30, 401 P.2d 382]; *People* v. *Kitchens* (1956) 46 Cal.2d 260, 263 [294 P.2d 17].)

and conviction of criminal offenders or violators of the health and safety laws." (*People* v. *Moore, supra*, (1968) 69 Cal.2d 674, 680.)

 We must, then, disregard the civil-criminal dichotomy in determining the contention made to us. But *Moore* involved evidence obtained by police officers in violation of the Fourth Amendment. In the case at bench we are concerned with alleged violations of the Fifth and Sixth Amendments by a non police officer. In spite of the holding in an Illinois case[4] (which is the only case we have found that deals with this precise issue), we conclude that the difference is material and that the *Escobedo-Dorado-Miranda* rules do not apply to interrogation by a physician conducted solely as a part of a statutorily required medical examination designed to determine medical facts as a basis for a treatment program. We point out that we do not deal with a case where a physician—psychiatrist or not—acts as an agent of the prosecution in order to obtain evidence to be used in a criminal prosecution;[5] here the examination was not by an agent of the police and was of a nature that, usually,[6] cannot be intelligently conducted without some interrogation of the examinee on matters that are likely to be "incriminating." The evils discussed by Chief Justice Warren in *Miranda* do not exist in connection with such an examination. "Whether any particular rule of criminal practice should be applied in a narcotic addict commitment proceeding depends upon consideration of the relationship of the policy underlying the rule to the proceeding." (*People* v. *Moore, supra*, (1968) 69 Cal.2d 674, 681.) We can see no policy reason to extend the *Miranda* rules to a physician acting solely as such in pursuance of a statutory duty and can see policy reasons against such an extension. We conclude that *Miranda* was not herein involved.

The order of commitment is affirmed.

Files, P. J., and Jefferson, J., concurred.

---

[4]*People* v. *Potter* (1967) 85 Ill.App.2d 151 [228 N.E.2d 238].

[5]In fact, by its express terms, the last paragraph of section 3100.6 of the Welfare and Institutions Code prohibits the use in criminal cases of evidence procured during the medical examination under the Narcotic Rehabilitation Act.

[6]We recognize that there may be cases in which the physical appearance of the examinee may be all that is required for the physician to form an intelligent opinion. But in many cases, particularly where the issue is that of "imminent danger" of addiction, a history of past usage will be essential.