[Crim. No. 13443.  In Bank.  Mar. 2, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL WAYNE BANKS et al., Defendants and Appellants.

## COUNSEL

Michael Wayne Banks and Calvin Dixon, in pro. per., and Fred E. Corbin, under appointment by the Supreme Court, for Defendants and Appellants.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Walter E. Wunderlich, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**SULLIVAN, J.**—Defendants Michael Wayne Banks and Calvin Dixon were charged by information with robbery. (Pen. Code, § 211.) The information also charged that defendants were armed with a deadly weapon at the time of the offense (see Pen. Code, § 211a) and alleged one prior felony convic-

tion against each defendant. At the time of arraignment upon the information defendant Banks admitted the prior conviction charged against him, and the prior conviction charged against defendant Dixon was dismissed upon motion of the prosecutor. A jury found defendants guilty of robbery in the first degree. They appeal from the judgments of conviction.[1]

On the evening of January 31, 1968, Victor Geroche was working in his liquor store in San Diego. About 7:30 p.m., while Geroche was waiting on customers, three young men entered the establishment. As Luther Reynolds, the last of these customers, was about to leave the store, two of the young men approached the counter and the third took a position at the door. Reynolds, apparently becoming suspicious, returned to the counter and asked Geroche whether something was wrong.

About the same time one of the young men placed a bottle of vodka on the counter and, producing a gun, ordered Geroche to "Give me what you got." The latter replied that he didn't have anything. The second man then went behind the counter and opened the cash register. At this point, the third man came up to the register, took money out of it, and left the premises. The man with the gun put the bottle of vodka in a bag and also left. Finally, the man who had opened the cash register took some money from it and started for the door. Geroche drew a revolver and captured him.

In the course of the robbery, Luther Reynolds managed to get out of the store and ran to a nearby market to summon the police. He waited outside the liquor store until they arrived and took the captured robber into custody.

Before the robbery took place, Clyde Holliday, a private patrolman, was on duty in the parking lot adjoining Geroche's store. He noticed four young men in the parking lot and saw three of them enter the liquor store. A short time later he was told by an unidentified person that the store was being robbed. Hurrying there, Holliday observed two of the young men whom he had just seen walk out of the store and return to the parking lot. One of them was carrying a paper bag which was twisted in such a way as to appear to Holliday to contain a bottle. Holliday proceeded into the store and found Geroche holding a gun on another of the young men whom he had seen in the parking lot prior to the robbery. He handcuffed this young man, told Geroche to call the police, and commenced to search the neighborhood in his car for the two other men. The search was unsuccessful.

The young man whom Geroche had apprehended, one Cecil King, in-

---

[1]Defendant Banks also purports to appeal from the order denying his motion for a new trial. That order is nonappealable (Pen. Code, § 1237, subd. 2; *People* v. *Lessard* (1962) 58 Cal.2d 447, 450 [25 Cal.Rptr. 78, 375 P.2d 46]), and the attempted appeal therefrom must be dismissed.

formed police that his two accomplices were defendants Dixon and Banks. Police then assembled two sets of five photographs each—one containing a photograph of Dixon and the other a photograph of Banks. They took these to the liquor store and showed them to Geroche by spreading them out on the counter. The latter immediately picked out the photographs of Banks and Dixon as the persons who had robbed him.

Defendant Dixon was arrested on a warrant at his residence on the morning of February 4, 1968. Later that day a lineup, in which Dixon appeared, took place at the offices of the police department. Prior to the lineup the officer in charge informed Dixon "that he had the right to have an attorney present during the line-up," but that "he could waive this right and we would proceed with the line-up." Dixon stated that "[h]e would go ahead and stand in the line-up without an attorney." However, Dixon was not informed that if he was unable to hire an attorney to be present at the lineup, one would be appointed for him.

Victor Geroche (the proprietor of the liquor store) and Clyde Holliday (the private patrolman) attended the lineup and positively identified defendant Dixon—Geroche as one of the men who had robbed him, and Holliday as one of the two men he saw emerging from the liquor store after the robbery. Geroche and Holliday also made tentative identifications of another person who appeared in the lineup as the third participant in the robbery. Defendant Banks, who was arrested on February 3 after he attempted to hold up a service station in National City, did not appear in this or in any other lineup.

On February 29, 1968, defendants Banks and Dixon were accused by information of the robbery of Geroche's liquor store. Cecil King, the third robber who was apprehended at the scene of the crime, apparently pleaded guilty at or prior to the preliminary examination.

On April 18, 1968, the cause was called for trial but the jury panel was excused pending determination of various motions by counsel. Defendant Dixon moved to suppress all evidence of the lineup and of in-court identifications upon the ground that the lineup was conducted in violation of the standards announced in *United States* v. *Wade* (1967) 388 U.S. 218 [18 L.Ed.2d 1149, 87 S.Ct. 1926], and *Gilbert* v. *California* (1967) 388 U.S. 263 [18 L.Ed.2d 1178, 87 S.Ct. 1951]. With the consent of counsel, the motion was continued to permit the court to read the transcript of the preliminary examination. On April 22, the hearing on the motion was resumed and testimony relative to the lineup was received from the officer who had conducted it and from defendant Dixon. The former testified as indicated above that prior to the lineup he advised Dixon that the latter had a right to have counsel at the lineup but that he could waive that right;

Dixon testified that no such admondition had been given him and that he had been told merely that he "was going to go in a lineup." Argument of counsel was primarily directed to the question whether defendant Dixon could validly waive his right to counsel at the lineup without being first informed that an attorney would be *appointed* to represent him there if he could not afford one.

The court ruled that in view of the warnings given him according to police testimony, defendant Dixon had waived his *Wade-Gilbert* right to counsel by participating in the lineup without counsel. It assumed that a valid waiver of the right could not occur absent an admonition that counsel would be appointed if the defendant was indigent, but it referred to the transcript of the preliminary examination, which it had consulted preparatory to the ruling, and apparently concluded therefrom that Dixon *had* been admonished at the time of arrest in the terms required by *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]. A proper *Miranda* admonition of course includes advice that counsel will be appointed if the suspect is indigent, and the trial court concluded that in the circumstances the omission of such advice immediately prior to the lineup did not preclude a valid waiver of *Wade-Gilbert* rights by voluntary appearance in the lineup. The ruling of the trial court is set forth in the margin.[2]

At trial Victor Geroche made a positive in-court identification of defendants Dixon and Banks as two of the three men who robbed his store on January 31, 1968. He further testified concerning his identification of photographs of defendants from the two sets of mug shots which were brought to his store a few days after the robbery. Finally Geroche testified relative to the lineup of February 4, 1968, and his identification of defendant Dixon at that time.

On cross-examination some doubt was cast on the identification evidence given by Geroche. In the course of his direct examination Geroche had

[2]"THE COURT: And having in mind the *Gilbert* case and the other case that has been cited and the effectiveness of it, and the *Miranda* rule and what interpretations have been given to that by later cases, having in mind and having read the transcript, the giving of admonitions at the time of the arrest by other officers, and also that it is not necessary every time you talk to a defendant after he is originally admonished to readmonish him and to restate the proposition that if he hasn't money the court will appoint an attorney for him—it has not been refined that that has to be repeated every time you talk to a defendant, and considering credibility, it is the ruling of the Court that there was an effective waiver at the time of the lineup, and that there had been a previous admonition, which need not then be repeated, and that everything that has come before the Court indicates on its surface that the lineup was conducted in a fair and impartial and proper manner. The motion to suppress the evidence resulting from the lineup in the identification made by two persons, or at least one person, is denied, and that evidence will be available."

testified that Dixon and Cecil King were the two men who had approached the counter during the robbery, and that Banks had remained near the door. When on cross-examination he was shown the photographs which had been displayed to him at his store a few days after the robbery, he identified a photograph of defendant Dixon and stated that *he* was the one who had stood by the door. Moreover, it was brought out in the course of cross-examination that Geroche was farsighted and wore glasses for close work. When he was asked to examine the photographs he put on his glasses. Geroche stated, however, that he had not worn his glasses when he chose the photographs of Dixon and Banks from among the two sets brought to his store.

Luther Reynolds, the customer who was in Geroche's store at the time of the robbery, was unable to identify either defendant as one of the robbers. He also testified that he had been unable to make an identification at the preliminary examination.

Clyde Holliday, the private patrolman, made a positive in-court identification of defendants Dixon and Banks as the two young men whom he saw emerging from Geroche's store immediately after the robbery. He also testified relative to the lineup wherein he identified Dixon. Holliday's identification was challenged on cross-examination. When he was shown the photographs which had been brought to Geroche's store he chose that of Dixon and stated that it resembled one of the two defendants in the courtroom; the defendant which he indicated was Banks.

Cecil King, the robber apprehended at the scene who had entered a guilty plea prior to trial, was called as a witness for the prosecution. However, he testified that Banks and Dixon were not with him at the time of the robbery. He also testified that he, King, had not informed police that Banks and Dixon were his accomplices, although their names had been mentioned to him by police when he was questioned after his arrest. King's testimony on this point was later contradicted by the officer who had questioned King after the arrest; the officer also explained that King had manifested great reluctance to disclose the names because he feared retaliation.

The defense was alibi. Defendant Banks and his mother testified to the effect that he spent the day of the robbery drinking beer and wine at the home of a friend; that he went home quite drunk late in the afternoon; that he fell asleep on the couch at his home shortly before 5:30 p.m.; and that he remained there asleep until the following morning. Defendant Dixon and a friend who claimed to have been with him on the day of the robbery testified that they spent the hours from about 4:45 p.m. to 8 p.m. in and near an establishment called the Teen Post where they played ping pong

and lifted weights. Both defendants denied any participation in the robbery of Geroche's liquor store.

■ Defendant Dixon contends that the admission of evidence of the lineup in which he appeared was prejudicial error because that lineup was conducted in violation of the rules enunciated in *United States* v. *Wade, supra,* 388 U.S. 218, and *Gilbert* v. *California, supra,* 388 U.S. 263.

The lineup in question took place after June 12, 1967, the date of the *Wade* and *Gilbert* decisions; the rules therein enunciated are therefore applicable. (*Stovall* v. *Denno* (1967) 388 U.S. 293 [18 L.Ed.2d 1199, 87 S.Ct. 1967].) The fact that the lineup took place prior to formal accusation is of no moment. (*People* v. *Fowler* (1969) 1 Cal.3d 335, 342-344 [82 Cal.Rptr. 363, 461 P.2d 643].) Because defendant Dixon was not represented by counsel at the lineup, it is clear that that lineup was conducted in violation of the *Wade-Gilbert* rules—and that the admission of evidence concerning his identification at the lineup was per se erroneous. (*Gilbert* v. *California, supra,* 388 U.S. 263, 272-274 [18 L.Ed.2d 1178, 1186-1187, 87 S.Ct. 1951]; *People* v. *Fowler, supra,* 1 Cal.3d 335, 341, 349-350)— unless he effectively waived the right to be so represented.

The People urge that such a waiver occurred in this case. It is clear, however, that the admonition given to defendant Dixon immediately prior to the lineup was not sufficient in itself to support a valid waiver, for that admonition did not inform Dixon that an attorney would be appointed for him at public expense if he desired to be represented at the lineup but lacked the funds necessary to retain counsel. ■ As we said in *Fowler:* "[W]hen the right to counsel at lineup has attached, the suspect is entitled to be so notified *and to be notified that counsel will be appointed if necessary.* Only if he is so notified can his election to proceed in the absence of counsel be deemed an intelligent waiver of the accrued right. (*United States* v. *Wade, supra,* 388 U.S. 218, 237. . . .)" (Italics added.) (1 Cal.3d at p. 345.)[3]

■ It is contended that in this case defendant *was* sufficiently advised of his rights to allow an intelligent waiver because he was given a full *Miranda* warning at the time of his arrest—which occurred on the day of the lineup.[4] As indicated above, it was the factor of a *Miranda* warning

---

[3] The People have suggested that the rule here stated should be limited in its application to lineups occurring after our *Fowler* decision—and therefore should not be applied in the instant case. We do not agree. As our citation of authority in *Fowler* indicates, the rule in question can be clearly inferred from Justice Brennan's opinion in *Wade* and is not a "new" rule originating in *Fowler.*

[4] The arrest occurred between 7 and 8 a.m. on February 4, 1968. The lineup occurred in the "early afternoon" of the same day.

at the time of arrest which formed the basis of the trial court's denial of the pretrial motion to suppress identification evidence (see fn. 2, *ante*). However, our examination of the record, including the transcript of the preliminary examination which the trial court examined prior to its ruling,[5] reveals nothing which would indicate that a *Miranda* warning *was* given defendant Dixon at any time. We therefore must conclude that the contention has no basis in the instant record and may not be considered by us on this appeal. (See *People* v. *Merriam* (1967) 66 Cal.2d 390, 396-397 [58 Cal.Rptr. 1, 426 P.2d 161].)

However, in view of our conclusion, explained below, that the failure to exclude the lineup evidence requires a reversal of the judgment, and also in view of the fact that, in the event of a retrial, evidence may be offered showing that a *Miranda* warning was in fact given prior to the questioned lineup, we consider the People's contention for guidance of the trial court.

This court has recently indicated that it will adopt a case-by-case approach, based upon the facts of the particular case, on the question whether a warning as to constitutional rights given some time prior to a questioned interrogation will be sufficient to imply waiver of those rights from the defendant's participation in such interrogation. (*People* v. *Johnson* (1969) 70 Cal.2d 469, 476-477 [74 Cal.Rptr. 889, 450 P.2d 265].) Thus, when a defendant at the time of interrogation acknowledges that he understands his rights as they have been explained to him on a prior occasion, it has been held that a fresh admonition is not necessary to a valid waiver of such rights. (*People* v. *Schwartzman* (1968) 266 Cal.App.2d 870, 883-884 [72 Cal.Rptr. 616].) On the other hand, when the prior admonition was given in the context of a proceeding different from that to which the questioned interrogation relates, it has been held that such a fresh admonition *is* necessary to valid waiver. (*People* v. *Garcia* (1969) 268 Cal.App.2d 712, 714-715 [74 Cal.Rptr. 103].) In the latter situation it is reasoned that a defendant may not understand that rights available to him in one kind of proceeding are similarly available in another.

By a parity of reasoning we believe that an unsophisticated defendant might well conclude that rights available to him in a context of interrogation are not available in a lineup context—especially when it does not appear that he has acknowledged awareness of his rights. Thus, such a defendant might conclude that, whereas comprehensive rights to counsel are available when he undergoes a process of interrogation in order to safeguard his right to be silent, such rights are not provided when he appears in a lineup

---

[5]Although the transcript of the preliminary examination was not included in the record on appeal as originally transmitted to us, we have, upon stipulation by all parties, augmented the record to include it. (See rule 12(a), Cal. Rules of Court.)

because he will not be called upon to make verbal responses and commitments. ■ In view of this possibility we hold that the admonition required by the *Miranda* decision as to rights upon *interrogation* is not sufficient to permit a valid waiver of rights available in a *lineup*—and that a specific admonition as to lineup rights is essential to a valid waiver of such rights.

■ Because defendant Dixon was not represented by counsel at the lineup and did not effectively waive his right to be so represented, it was error per se to admit evidence concerning his identification at the lineup. (*Gilbert* v. *California, supra,* 388 U.S. 263, 272-274; *People* v. *Fowler, supra,* 1 Cal.3d 335, 341, 349-350.) ■ This error compels reversal of the judgment convicting Dixon unless the People can show "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." (*Chapman* v. *California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710, 87 S.Ct. 824, 24 A.L.R.3d 1065]; see *Gilbert* v. *California, supra,* 388 U.S. 263, 272-274; *People* v. *Fowler, supra,* 1 Cal.3d 335, 349-350.)

The People have not made the requisite showing. Here, as in *Fowler,* identification was the single issue of substance in the trial. The primary witness to the robbery, Geroche, made a positive identification of Dixon in the courtroom, but cross-examination revealed some confusion on his part as to the roles played by each defendant and thus tended to weaken the force of his testimony. The second witness to the robbery, Luther Reynolds, was unable to identify either defendant at trial—and had been unable to make an identification at the preliminary examination—even though he had had considerable opportunity to observe the robbers at the scene. The third identification witness, Clyde Holliday, positively identified Dixon as one of the two men he saw emerging from the liquor store following the robbery, but he like Geroche seemed unable to avoid confusion when faced with photographs of the two defendants. Finally, Cecil King testified that Dixon had not assisted him in the robbery, and Dixon and a friend gave alibi testimony which, if believed, would have established his innocence. In these circumstances we cannot declare it clear beyond a reasonable doubt that the erroneous admission of lineup testimony on the part of Geroche and Holliday did not contribute to the verdict obtained, and we therefore must reverse the judgment convicting Dixon.

■ Defendant Banks' primary contention is that the trial court erroneously admitted evidence of an offense committed by him subsequent to the charged crime.

As indicated above, Banks was arrested on February 3, 1968—three days after the robbery of Geroche—in the course of an unsuccessful robbery of

a service station in National City. Among the pretrial motions made on April 18, 1968, was a motion to suppress evidence of this subsequent robbery, and at that time the prosecutor indicated that such evidence would be offered at trial for the purpose of showing, through a common modus operandi, that Banks was one of the participants in the charged crime. The motion was denied.

At trial the prosecutor, "in the interests of fairness and fair play," requested that evidence of the subsequent offense be heard by the court out of the presence of the jury[6] and that the court rule upon admissibility in the context of an offer of proof. The request was granted, and the People called one Dewey Madden, who testified that on the night of February 3, 1968, he was working at a service station in National City; that about 10:30 p.m. he and a friend were sitting in the office of the service station when defendant Banks entered and stated to him "Give it up"; that Madden asked Banks what he meant by that and Banks replied "Your money"; that Banks had one hand in a pocket of his coat and made motions as if he had a gun; that Madden asked to see the gun but Banks refused to show it and replied "Just give me your money"; that while this discussion was going on another man walked into the office and said "I ain't got nothing to do with this" and "He has got a gun"; that this convinced Madden that Banks really had a gun and he walked outside to the cash box located on one of the concrete islands in the station; that Banks remained inside with Madden's friend and the person who had entered after Banks; that while outside Madden saw a police car and motioned it to come into the station; and that Banks was then arrested by the police. Apparently no gun was found in Banks' possession. The man who entered after Banks, according to the testimony of Madden, was not Dixon; this man was not arrested.

The court ruled that the evidence was admissible against Banks for purposes "limited to intent, to identity, and to common plan and scheme." Madden's testimony before the jury was identical in all relevant respects to that presented to the court.

In several recent cases this court has emphasized that the extreme prejudicial effect of evidence of offenses other than that charged requires that the trial court, prior to admitting such evidence, undertake a closely reasoned analysis of probative value in order to determine whether such value is sufficient to outweigh inherent prejudice. (See *People* v. *Haston* (1968) 69 Cal.2d 233, 244-247 [70 Cal.Rptr. 419, 444 P.2d 91]; *People* v. *Cavanaugh* (1968) 69 Cal.2d 262, 272-274 [70 Cal.Rptr. 438, 444 P.2d

---

[6]It is clear, of course, that questions as to the admissibility of other-crimes evidence must be determined out of the presence or hearing of the jury. (See Evid. Code, § 310.)

110]; *People* v. *Kelley* (1967) 66 Cal.2d 232, 238-239 [57 Cal.Rptr. 363, 424 P.2d 947].) When the purpose for which such evidence is offered is that of identifying the defendant as the perpetrator of the charged offense through showing a modus operandi common to the charged and uncharged offenses, particular care must be exercised to insure that the inference of identity, upon which probative value depends, is of significant force. "It is apparent that the indicated inference does not arise . . . from the mere fact that the charged and uncharged offenses share certain marks of similarity, for it may be that the marks in question are of such common occurrence that they are shared not only by the charged crime and defendant's prior offenses, but also by numerous other crimes committed by persons other than defendant. On the other hand, the inference need not depend upon one or more unique or nearly unique features common to the charged and uncharged offenses, for features of substantial but lesser distinctiveness, although insufficient to raise the inference if considered separately, may yield a distinctive combination if considered together. Thus it may be said that the inference of identity arises when the marks common to the charged and uncharged offenses, considered singly or in combination, logically operate to set the charged and uncharged offenses apart from other crimes of the same general variety and, in so doing, tend to suggest that the perpetrator of the uncharged offenses was the perpetrator of the charged offenses. . . . [Par.] The important point to be made is that, when such evidence is introduced for the purpose of proving the identity of the perpetrator of the charged offense, it has probative value only to the extent that *distinctive* 'common marks' give logical force to the inference of identity. If the inference is weak, the probative value is also weak, and the court's discretion should be exercised in favor of exclusion." (Fns. omitted.) (*People* v. *Haston, supra,* 69 Cal.2d 233, 245-247.)

We think it clear that there are no marks common to the charged robbery of Geroche's liquor store and Banks' unsuccessful attempt to rob the National City service station which would be sufficient to raise a reasonable inference that their respective perpetrators were the same person. ▮ The common marks upon which the People rely are the following: (1) Both robberies were directed against small business establishments. (2) Both robberies occurred in the evening. (3) The robberies took place within a few days of one another. (4) Both robberies were carried out in so "imprecise" a manner that one of the perpetrators was apprehended at the scene. (5) The language used by the robber who demanded the money was similar in each case. None of these marks, with the possible exception of the last, manifests any distinctiveness of the kind which would operate to set the two offenses in question apart from any number of armed robberies occurring in the San Diego area during the period in question. As for the last mark, to wit, that the demand language was similar in each case, it is

notable that the testimony of Geroche and Luther Reynolds maintained that *Dixon* spoke the demand language in the Geroche robbery. Thus, even if the language used in each robbery had been identical, rather than merely similar, any inference of identity would have to depend on the doubtful proposition that one who uses certain language in one robbery tends to asscciate in criminal activity with other persons who use the same language.

It has been indicated above that the trial court considered the evidence in question admissible against Banks *not only* on the issue of identity *but also* on the issue of intent. However, there was no doubt in this case that the perpetrators of the Geroche robbery harbored an intent to rob. The question was whether those robbers were *defendants*. (Cf. *People* v. *Kelley, supra,* 66 Cal.2d 232, 243-244.)

For the foregoing reasons we have concluded that the evidence of Banks' robbery attempt in National City lacked significant probative value oh the single issue to which it was relevant (i.e., identity) and that the trial court abused its discretion in admitting such evidence over objection.

■ This error requires reversal of the judgment convicting Banks of the Geroche robbery. As indicated above, the sole issue in the case was identification. One of the two persons who were present during the robbery itself was unable to identify either defendant as a perpetrator, and the other (Geroche), although he made a positive in-court identification of Banks, manifested a tendency to confuse Banks with Dixon. The in-court identification made by Clyde Holliday, the private patrolman, was infected with the same tendency. Moreover, Cecil King, who had admitted his participation in the robbery by a plea of guilty, testified that Banks was not involved. Finally, Banks produced an alibi which was supported by his mother and was not internally impeached by the prosecution. In these circumstances we must conclude it reasonably probable that a result more favorable to Banks would have been reached in the absence of the erroneous admission of evidence concerning his unsuccessful attempt to rob the National City service station. (See *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]; Cal. Const., art. VI, § 13.)

We do not here consider other contentions raised by defendants.[7] In the event of retrial Geroche and Holliday may be permitted to make in-court identifications of defendant Dixon only if it is shown by clear and convincing proof adduced out of the presence of the jury that such in-court identifications have an origin independent of the illegally conducted lineup. (*United States* v. *Wade, supra,* 388 U.S. 218, 239-243 [18 L.Ed.2d 1149,

---

[7]Defendant Dixon's challenge to the sufficiency of the arrest warrant cannot be considered because neither the warrant nor the underlying criminal complaint is before us. (*People* v. *Merriam, supra,* 66 Cal.2d 390, 396-397.)

1164-1167, 87 S.Ct. 1926]; *Gilbert* v. *California, supra,* 388 U.S. 263, 272; *People* v. *Fowler, supra,* 1 Cal.3d 335, 350; *People* v. *Caruso* (1968) 68 Cal.2d 183, 189-190 [65 Cal.Rptr. 336, 436 P.2d 336].) Questions concerning the admissibility of evidence of pretrial photographic identification and its effect upon in-court identification will be governed by the principles stated in *Simmons* v. *United States* (1968) 390 U.S. 377 [19 L.Ed.2d 1247, 88 S.Ct. 967].

Defendant Banks' purported appeal from the order denying a motion for new trial is dismissed, said order being nonappealable. The judgments are, and each of them is, reversed.

Tobriner, Acting C. J., and Peters, J., concurred.

Mosk, J., and Burke, J., concurred in the judgment.

**McCOMB, J.**—I dissent. I would affirm the judgments for the reasons expressed by Mr. Presiding Justice Gerald Brown in the opinion prepared by him for the Court of Appeal, Fourth District, Division One (*People* v. *Banks,* 4 Crim. 3293, filed March 14, 1969, certified for non-publication).