[Crim. No. 8786. First Dist., Div. One. Apr. 1, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
LARRY EVANS, Defendant and Appellant.

## COUNSEL

Suzanne E. Graber, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Robert R. Granucci and Gloria F. DeHart, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**ELKINGTON, J.**—A jury found defendant Larry Evans guilty of first degree robbery. (Pen. Code, § 211.) In his appeal from the ensuing judgment the principal contention is that he "was not advised of his constitutional right to appointed counsel at the lineup." Reliance is placed on *Gilbert* v. *California*, 388 U.S. 263 [18 L.Ed.2d 1178, 87 S.Ct. 1951]; *United States* v. *Wade*, 388 U.S. 218 [18 L.Ed.2d 1149, 87 S.Ct. 1926]; and *People* v. *Fowler*, 1 Cal.3d 335 [82 Cal.Rptr. 363, 461 P.2d 643].

Viewed in a light most favorable to the People (see *People* v. *Reilly*, 3 Cal.3d 421, 425 [90 Cal.Rptr. 417, 475 P.2d 649]) the evidence shows that Evans gave a ride to a couple of hitchhiking sailors and that thereupon he and another, armed with a knife and gun, by force and threats of violence, took the sailors' wallets, watches and rings and then pushed them from the automobile. No contention is made that the jury's verdict was not supported by substantial evidence.

The evidence reasonably related to the questioned lineup follows.

Upon Evans' arrest he was promptly advised of his so-called *Miranda* rights (see *Miranda* v. *Arizona*, 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]) by a police officer reading from a printed form as follows:

"Number one: You have a right to remain silent.

"Number two: Anything you say can and will be used against you in a court of law.

"Number three: You have the right to talk to a lawyer and have him present while you are being questioned.

"Number four: If you cannot afford to hire a lawyer, one will be appointed to represent you before any questioning if you wish one.

"Number five: If you desire a lawyer at any time during my questioning, inform me of that and further questions will not be asked until your lawyer is present."

The same officer testified to a conversation with Evans immediately thereafter, as follows: "Then I asked him, 'Do you understand each of these rights I have explained to you?' And he said he did. And, 'Number two: Having these rights in mind, do you wish to talk to us now?'

"Q. What was his response to that second question?

"A. He said at this time he didn't wish to make any statement.

"Q. Now, did you then advise him of having a lineup?

"A. I did.

"Q. What did you advise him in that regard?

"A. I told him that we were going to have a lineup and have two victims view the lineup. He stated that he had no objection. I told him he had the right to have an attorney present while he stood in this lineup. And he said that he didn't have any objections to standing in the lineup, but he didn't wish to make any statement. He repeated that again.

"Q. He repeated he didn't want to make any statement?

"A. Yes.

"Q. What did he say about having an attorney present?

"A. He said he didn't want an attorney at this time, to stand in the lineup, because he hadn't done anything."

The officer continued:

"Q. All right. And when you got to the County Jail for the lineup, did you explain the lineup procedure to him?

"A. I did.

"Q. And did he say anything in connection with the lineup?

"A. Yes, sir.

"Q. What was that?

"A. Well, they have a form at the Sheriff's Office, I believe they call it a release and waiver form, and this contains all of the constitutional rights on the card, that I gave. And on the admonishment there is a little box there to check and I read that form to Larry and then he checked those two boxes and signed it.

"Q. Did he do anything else with the form?

"A. Nothing that I recall.

"Q. Did he alter the form in any way?

"A. Oh, he—there is a place on the form where it says, 'Do you wish to make a statement?' and he crossed that out.

"Q. This is actually a form that had something to do with the statement, but you used it for the lineup purposes; is that right?

"A. Yes."

The form that was read to Evans before the lineup was the *"Miranda form"* which contained precisely the same admonition (quoted *ante*) concerning his constitutional rights previously given him.

Another officer testified about the lineup conversation with Evans in this manner:

"Q. Would you tell us what that conversation was, as far as you can recall?

"A. As far as I can recall, Sgt. Lynch informed Mr. Evans as to what was going to take place as to the lineup and as to someone coming in possibly to make an identification of someone in the lineup, if he would, and he advised him of his rights as to the lineup and advised him that he didn't have to take a lineup and advised him also that throughout any proceedings, the whole procedure, he could have an attorney if he wished one.

"Mr. Evans replied, stating that he didn't want to make a statement; he signed the form at the Sheriff's Department and he crossed out a section whereby it stated in there, 'Do you wish to make a statement?' He crossed that particular statement out on the form. He also further stated that he would take a lineup and that he would take a lineup because he hadn't done anything and he didn't know what he was down to the police department for.

"Q. Did Sgt. Lynch advise him that he had the right to have an attorney at the lineup?

"A. Yes.

"Q. What did the defendant say?

"A. He said he didn't wish to have an attorney."

Over the objection of Evans, testimony concerning the following lineup identification was placed before the jury. The lineup consisted of five male Negroes including Evans. Each of the sailor victims viewed the lineup separately. Each was given a slip of paper, told to say nothing but if he recognized anyone in the lineup to write down the number of the person so recognized. One sailor identified Evans as one of the robbers in this manner. He testified that no one told him about the identity of any person in the lineup before he viewed it, or that the individual holding card number one (Evans) warranted any particular study (Evans had his choice of positions in the lineup), and that no one indicated which person he should select. He also stated there was no doubt in his mind that the person holding card number one was one of the robbers. The second sailor was unable to positively iden-

tify anyone in the lineup. No suggestion is made that the lineup was *in fact* unfair in any way.

    ■   Evans, of course, had a constitutional right to be notified of his right to counsel at the lineup *and that counsel would be appointed for that purpose, if necessary.* (See *People* v. *Fowler, supra,* 1 Cal.3d 335, 345; *United States* v. *Wade, supra,* 388 U.S. 218.)  ■  As indicated, he phrases his contention as not being "advised of his constitutional right to appointed counsel at the lineup." Since demonstrably the officer told him that "he had the right to have an attorney present while he stood in this lineup" (see *ante*), the point must be that he was not told that counsel would be appointed for that purpose if necessary. *People* v. *Fowler, supra,* page 345, holds that "Only if he is so notified can his election to proceed in the absence of counsel be deemed an intelligent waiver of the accrued right. . . ."

After a *voir dire* inquiry out of the presence of the jury the trial court stated: "I further find from the evidence adduced that the defendant was advised of his right to counsel under the *Wade* and *Gilbert* doctrine and in conjunction with the lineup and intelligently waived same." Our problem accordingly appears to be the determination whether the court's conclusion receives substantial support in the record.

A brief recapitulation of the pertinent evidence found true by the court and undenied by Evans seems proper at this point.

Upon his arrest Evans was painstakingly and precisely told what his *Miranda* rights were. Among other things he was told, "If you cannot afford to hire a lawyer, one will be appointed to represent you before any questioning if you wish one." At the same time he was asked if he had any objection to a lineup; he said he had no objection. He was then told that he "had the right to have an attorney present while he stood in this lineup." He replied, "he didn't want an attorney at this time to stand in the lineup."

Later, taken to the lineup, Evans was again, and inadvertently, given the complete *Miranda* admonition, including "If you cannot afford to hire a lawyer, one will be appointed to represent you before any questioning if you want one." But additionally he was told that "he didn't have to take a lineup," but that if he did, throughout the whole (lineup) procedure, *"he could have an attorney if he wished one."* Again Evans said *"he didn't wish to have an attorney."*

The foregoing may reasonably be construed (and was obviously so construed by Evans) as an admonition that an attorney would be furnished him at the lineup if he wanted one. And by his insistence that he "didn't wish to have an attorney at the lineup" it appears to us that he clearly and knowingly waived that right.

In *People* v. *Banks,* 2 Cal.3d 127, 135-136 [84 Cal.Rptr. 367, 465 P.2d 263], the court stated: ". . . we believe that an unsophisticated defendant might well conclude that rights available to him in a context of interrogation are not available in a lineup context—especially when it does not appear that he has acknowledged awareness of his rights. Thus, such a defendant might conclude that, whereas comprehensive rights to counsel are available when he undergoes a process of interrogation in order to safeguard his right to be silent, such rights are not provided when he appears in a lineup because he will not be called upon to make verbal responses and commitments. *In view of this possibility* [italics added] we hold that the admonition required by the *Miranda* decision as to rights upon *interrogation* is not sufficient to permit a valid waiver of rights available in a *lineup*—and that a specific admonition as to lineup rights is essential to a valid waiver of such rights."

It is possible that the defendant, after listening to the *Miranda* warning, and then having been advised of his right to an attorney at the lineup in a more cursory fashion, might have concluded that he was not entitled to have an attorney appointed for the lineup. We do not read *Banks* as going so far as to preclude a waiver where there has been both a *Miranda* admonition and advice with respect to the right to the presence of an attorney at the lineup. In *Banks* the prosecution sought to rely on the *Miranda* warning alone as forming the basis for a waiver. ■ It is clear that although a *Miranda* admonition is given and taken advantage of by the defendant, he may waive the right to counsel at a lineup where he has been given "a specific admonition as to lineup rights." (See *People* v. *Diaz,* 276 Cal.App.2d 547, 550-554 [81 Cal.Rptr. 16].) ■ There was sufficient evidence in this case to support the trial court's finding of waiver.

■ In any event, our perusal of the record enables us to declare a belief that any error in admitting the identification testimony would have been harmless beyond a reasonable doubt. (See *Chapman* v. *California,* 386 U.S. 18, 24 [17 L.Ed.2d 705, 710, 87 S.Ct. 824, 24 A.L.R.3d 1065]; see also *Gilbert* v. *California, supra,* 388 U.S. 263, 272-274 [18 L.Ed.2d 1178, 1186-1187]; *People* v. *Banks, supra,* p. 136; *People* v. *Fowler, supra,* 1 Cal.3d 335, 349-350.)

After being pushed out of the car the sailors noted the license number, remembering it as *DUU 396.* The crime was reported to the police; the license number, as recalled, was furnished and the car was described. They also reported that "a couple of inches were broken off of the stick shift." The car's description was broadcast to other policemen. A short time later a policeman saw a parked car which fit the description. The sailors were then told they were being driven to an area "where a car was suspected of being

the one that we had given the description of." While being driven down a street at about 20 miles per hour, one of the sailors pointed out a car. The officers in no way had suggested that it was the car; they simply drove down the street. The car's license was *DOU 394,* and its shift lever was broken as described by the sailors. Another officer arrived with "three mug books" which the sailors examined. One sailor said a photograph "was familar"; it was a photograph of defendant Evans. The other sailor could not make a positive identification. The officers, who knew Evans, then went to his house where he was arrested. The house was on the same block where the car was found and the car belonged to Evans. Until the questioned lineup Evans was not seen by the sailors after the robbery.

Evans took the stand in his own behalf. He admitted his participation in the affair and substantially confirmed the testimony of the sailors. His partner had told him to pick up the two sailors standing across the street so he could rob them. Evans did so, returning the victims to the partner who then got into the car. He admitted taking a watch from one of the sailors, but he became involved in the affair only because his partner, who was "a kind of violent guy" who "creates problems and trouble," had threatened to cut his throat. (The sailors had testified that the first indication of robbery was when Evans, the driver, stopped the car and said "I got a gun. Give us your watch and your wallet.") And Evans was positively identified in court by one of the sailors.

It is obvious that evidence of the lineup identification of Evans by one of the sailors added little, if any, additional probative force to the strong evidence against him.

No contention was made at the trial, nor is any made here, that Evans took the stand under compulsion of the evidence of the lineup. Nor does the record indicate that such was the case.

▬▬▬ Another contention of Evans is that the court erred in refusing his "request for a change of appointed counsel."

After commencement of the trial Evans announced he felt the court-appointed public defender was not representing him properly and asked to have him "stricken from being my lawyer." He asked to be furnished another lawyer. In the ensuing discussion Evans conceded that there would be "grave risk" if he attempted to represent himself. Our study of the record discloses that the public defender competently handled Evans' defense. And we find no contrary contention in Evans' brief.

The Supreme Court in *People* v. *Williams,* 2 Cal.3d 894, 904 [88 Cal. Rptr. 208, 471 P.2d 1008], adopting and quoting language of *People* v.

*Mitchell,* 185 Cal.App.2d 507, 512 [8 Cal.Rptr. 319], stated the applicable law in this manner:

■ " '[T]he decision whether to permit a defendant to discharge his appointed counsel and substitute another attorney during the trial is within the discretion of the trial court, and a defendant has no absolute right to more than one appointed attorney. ■ "A defendant's right to a court-appointed counsel does not include the right to require the court to appoint more than one counsel, except in a situation where the record clearly shows that the first appointed counsel is not adequately representing the accused. . . . ■ 'The right of a defendant in a criminal case to have the assistance of counsel for his defense . . . may include the right to have counsel appointed by the court . . . discharged or other counsel substituted, if it is shown . . . that failure to do so would substantially impair or deny the right . . ., but the right to such discharge or substitution is not absolute, in the sense that the court is bound to accede to its assertion without a sufficient showing . . . that the right to the assistance of counsel would be substantially impaired . . . in case the request is not granted. . . .' " ' "

■ Patently the instant contention is without merit.

■ Evans' secondary point that the court, refusing to appoint other counsel, should then have allowed him to represent himself is also meritless. Evans made no such request at the trial; indeed, as indicated, he asserted that he was wholly unable to defend himself. Forcing him to represent himself under the circumstances would have been gross error.

■ Evans personally, not counsel, urges additional error. His insistence that his constitutional right to a jury includes a right to "members of minority" is without merit, since the jury selection process was not shown to be discriminatory. (See *Swain* v. *Alabama,* 380 U.S. 202 [13 L.Ed.2d 759, 85 S.Ct. 824].) And his argument that the sailor victims saw him after his arrest and before the lineup is contrary to uncontradicted evidence.

The judgment is affirmed.

Molinari, P. J., and Sims, J., concurred.