[Crim. No. 7496. Second Dist., Div. Two. Feb. 4, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIE WADE, JR., Defendant and Appellant.

## COUNSEL

Donald F. Roeschke, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Howard J. Schwab, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**HERNDON, J.**—It was on the night of October 16, 1959, more than 11 years ago, that Kenneth Albert Swift was robbed and beaten to death on a vacant lot located in the Compton area. This robbery-murder was one of the most vicious, coldly calculated and savagely perpetrated crimes imaginable.

## Procedural History of the Case

An information charging appellant Willie Wade and his codefendant Joe Pollard with this crime was filed on June 17, 1960. On August 24, 1960, the case was brought on for a jury trial presided over by the Honorable Lewis Drucker, now retired. Wade was represented during the trial by Joseph M. Rosen, Esq., and Pollard was represented by Edwin Malmuth, Esq.

After a lengthy trial the jury returned a verdict finding both defendants guilty of first degree murder. As to Wade the jury imposed the death penalty and as to Pollard life imprisonment. At the time of denying Wade's motion for a new trial the court reduced his penalty to life imprisonment. Both defendants filed notices of appeal but Pollard's appeal was dismissed under rule 17a. Wade, whose appeal was perfected and prosecuted, will be referred to hereinafter as appellant.

On February 6, 1961, pursuant to appellant's application wherein he alleged that he had no money and no property of any kind, former Presiding Justice W. Turney Fox of this court made an order appointing attorney Burton Marks to act as appellant's counsel on this appeal.

Under date of March 10, 1961, Mr. Marks addressed a lengthy letter report to the court wherein he accurately summarized the evidence and cited decisions deemed pertinent to the issues in the case. It would serve no useful purpose to quote the entirety of said letter. The following excerpt sufficiently indicates Mr. Marks' conclusions:

"I have carefully reviewed the record, and have come to the following conclusions, the reasons for which I will amplify: (1) Judge Drucker accorded both the defendants one of the most fair and impartial trials this counsel has had opportunity to observe. All objections and motions (save one, see *infra*) were resolved in favor of the defendants. (2) Both defendants were afforded excellent representation, insofar as this counsel can see, as all favorable evidence on behalf of the defendants was presented. (3) The record is free from *reversible* error. (4) There may be legal error in the refusal of the Court to give an instruction as to second degree murder, but as will be seen further on, this error in a very practical sense would not seem to have prejudiced the defendants except for the length of time of their parole if parole is granted in the future."

An entry in this court's register of actions indicates that in response to the request of Mr. Marks for advice as to whether or not he should continue as counsel for appellant, he was instructed by the court to prepare and file a brief on appellant's behalf.

Thereafter, on April 13, 1961, appellant's opening brief was filed by Mr. Marks. That brief contained a statement of the relevant facts and an accurate summary of the evidence. The sole assignment of error argued in the brief was stated as follows: "The trial court erred in its failure to instruct the jury as to the degrees of murder; thereby depriving defendants of the possibility of receiving a second degree murder conviction." Counsel argued, with citations to several decisions, that the appellate court possessed, and should exercise, the power to modify the judgment by reducing the crime to murder of the second degree. After respondent's brief had been filed and the time for filing of additional briefs had expired, this court set the case for hearing. Oral argument having been waived, the cause was ordered submitted.

The record and the briefs filed in this case were reviewed and considered by Presiding Justice W. Turney Fox and Associate Justices Allen W. Ashburn and Roy L. Herndon, the justices then serving in Division Two of the Court of Appeal for the Second Appellate District. Having reached the conclusion that the appellant had received a fair trial and that no error had been committed by the trial court, the participating justices joined in the unanimous decision filed on August 17, 1961, affirming the judgment of conviction. (*People* v. *Pollard,* 194 Cal.App.2d 830 [15 Cal.Rptr. 214].)

The judgment of conviction thus affirmed attained, and for almost nine years retained, that degree of doubtful and tentative finality which in this present age of judicial enlightenment characterizes all such judgments.

On March 16, 1970, appellant, appearing in propria persona, filed in this court his petition entitled "Petition for Writ of Habeas Corpus to Recall the Remittitur." This petition alleged that the judgment of the trial court "is wholly void and imposed by the Court after having lost jurisdiction to pass sentence consisting as follows: (a) On appeal petitioner was denied the right to file an Opening Brief. (b) Petitioner was denied his Constitutional right to a full and fair hearing at the appellate level. (c) The conviction is founded on a confession extracted by force and violence, which [was] admitted over objection at the trial." This court examined said petition, concluded that it was unmeritorious, and denied it on March 26, 1970.

On April 30, 1970, appellant tendered to the Clerk of the Supreme Court of California a document entitled "Petition for Alternative Writ of Mandate." By a letter addressed to appellant at his place of imprisonment, the Clerk of the Supreme Court advised appellant as follows:

"This will acknowledge receipt of a document tendered by you and titled 'Petition for Alternative Writ.' A check of the record in the above case

discloses that the Court of Appeal, Second District denied a motion to recall the remittitur therein on March 26, 1970. After such a decision the proper remedy is to file a petition for hearing in this court. We have filed this date, said document as a petition for hearing. When the court has acted thereon, written notice of such action will be sent you."

On May 21, 1970, the following order of the Supreme Court of California was filed: "Petition of Willie Wade, Jr., for hearing granted and matter transferred to this court and retransferred to the Court of Appeal, Second District, Division Two, with directions to recall its remittitur as to Willie Wade, Jr., vacate its decision as to him, reinstate his appeal, appoint counsel for him and proceed in accord with *Anders* v. *California* (1967) 386 U.S. 738 [18 L.Ed.2d 493, 87 S.Ct. 1396] and *People* v. *Feggans* (1967) 67 Cal.2d 444 [62 Cal.Rptr. 419, 432 P.2d 21]."

On May 28, 1970, the following order was filed by this court: "Pursuant to order of the Supreme Court, It Is Ordered that the remittitur issued on October 17, 1961 is recalled, this court's decision and judgment filed August 17, 1961 is vacated and the appeal is reinstated. Mr. Donald F. Roeschke, who has consented to serve, is appointed counsel on the appeal. Opening brief due in 60 days."

By necessary implication, the order of the Supreme Court indicates disagreement with our view that the brief filed by Mr. Marks, Wade's former attorney, fulfilled every requirement of *Anders* and *Feggans.*

On September 2, 1970, appellant's newly appointed counsel filed on his behalf an opening brief some thirty pages in length summarizing the evidence and arguing six assignments of error hereinafter discussed.

### *Appellant's Present Contentions*

It is noteworthy that of the 33 decisions now cited and relied upon by present counsel, all but one were decided subsequent to August of 1961 when our former opinion was filed. Appellant now seeks to invoke several of the new rules of constitutional, procedural and substantive law which have been enunciated by the United States Supreme Court and by the Supreme Court of California during the past nine years. The deplorable confusion which has resulted from uncertainty as to the extent to which these new rules should be given retroactive application and the varying degrees of retroactivity ultimately accorded them evidently has not yet been completely dispelled.

In apparent obedience to the dictates of *Anders* and *Feggans,* counsel has advanced the following more or less "arguable" contentions: (1) Since appellant was not advised of his constitutional rights before he made his

alleged statements to the police, those statements were erroneously admitted into evidence; (2) Pollard's alleged statements to the police which implicated Wade were erroneously admitted into evidence; (3) the trial court erroneously failed to independently determine the issue of whether Wade's statements were voluntary; instead, the trial court erroneously permitted the jury to decide the issue; (4) the trial court erroneously refused to instruct the jury on the law of second degree murder; (5) the trial court erroneously failed to instruct the jury that the prosecution must prove the guilt of the accused to a "near certainty"; and (6) the trial court should have granted Wade's motion for a new trial on the grounds of the newly discovered evidence.

### The Evidence of Guilt Is Virtually Conclusive.

In the new opening brief present counsel for appellant has set forth an extensive and accurate summary of the evidence which differs in no substantial respect from that which is recited in the former decision of this court. (Cf. *People* v. *Pollard, supra,* 194 Cal.App.2d 830, 831-834.) To the extent that present counsel has stated the evidence in greater detail, he has only added emphasis to the inescapable conclusion that no person with the minimum of intelligence required to qualify for jury service could fail to agree, after hearing the incriminating testimony, or after reading the record of it, that the guilt of both Wade and Pollard was established to the nearest possible degree of certainty.

The record supports the jury's apparent conclusion that it was appellant Wade who actually "stomped" the life out of the victim and that Pollard participated in the final act of killing only to the extent of getting in a "kick or two." Realistically viewed, Pollard's abandonment of his appeal almost certainly is indicative of his recognition of his guilt. But in any event the judgment against him long since has become final. It would indeed be an ironical and sad commentary on our system of justice if the more brutal of these two murderers, whose guilt has been established to the nearest conceivable degree of certainty, were to be turned loose upon society on the basis of some tenuous legal technicality.

### (1) The Escobedo-Dorado Rules Are Inapplicable to This Reinstated Appeal.

The following quotation from *People* v. *Rivers* (1967) 66 Cal.2d 1000, 1004-1005 [59 Cal.Rptr. 851, 429 P.2d 171], is deemed sufficient to explain and justify our rejection of appellant's first contention, namely, that because there is no alternative evidence in the record that appellant was advised of his right to counsel and his right to remain silent before

he made his self-incriminating statements to the police, *People* v. *Dorado* (1965) 62 Cal.App.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361], and *Escobedo* v. *Illinois* (1964) 378 U.S. 478 [12 L.Ed.2d 977, 84 S.Ct. 1758], require us to hold that the admission of such statements constituted reversible error: "Insofar as the additional shaft provided by *Escobedo* is primarily prophylactic, it is directed at controlling future police conduct, not conduct that was long ago completed and that was then lawful. Retroactive application of *Escobedo*, regardless of the finality of the judgments of conviction or the voluntariness of the defendants' statements would create the very harms we sought to foreclose in *Lopez*. It 'would result in the reconsideration of countless cases that were correctly decided under the law in force at the time of trial; in many such cases witnesses and evidence would no longer be available. Many hardened and dangerous criminals would glean the greatest profit from [such a rule]; they serve lengthy sentences imposed long ago; their cases thus offer the least likelihood of successful retrial. To require a general release of prisoners of undoubted guilt would be to cripple the orderly administration of the criminal laws.' (*In re Lopez, supra,* 62 Cal.2d at p. 381.)

"The serious disruption of the administration of the criminal law that would be caused by retrials and by the denial of the use of statements received in full compliance with the law compels adherence to the rationale of *In re Lopez*. We therefore hold that the *Escobedo-Dorado* rules do not apply to reinstated appeals such as this one. Cases in which it has been held or assumed that those rules apply to reinstated appeals are disapproved insofar as they are inconsistent with the views expressed herein. [Citations.]" (See also, *People* v. *Mitchell* (1969) 275 Cal.App.2d 351, 353 [79 Cal.Rptr. 764].)

Moreover, as our summary of the evidence discloses, appellant's so-called "confessions," first made to a group of his assembled friends on the night of the murder and later voluntarily repeated to the investigating officers, were not in any true sense confessions. Actually they partook more of the nature of boastful, remorseless, unrepentant and self-incriminating declarations.

(2) *The Admission into Evidence of the Extrajudicial Statements of the Codefendant Pollard Did Not Constitute Prejudicial Error.*

█ Relying on *People* v. *Aranda* (1965) 63 Cal.2d 518 [47 Cal.Rptr. 353, 407 P.2d 265], and *Bruton* v. *United States* (1968) 391 U.S. 123 [20 L.Ed.2d 476, 88 S.Ct. 1620], appellant contends that the judgment must be reversed by reason of the trial court's error in admitting evidence of the codefendant Pollard's extrajudicial statements implicating appellant.

We reject this contention on the authority of *In re Whitehorn* (1969) 1 Cal.3d 504, 515-516 [82 Cal.Rptr. 609, 462 P.2d 361], wherein it was held that the error involved in the admission of the extrajudicial statements of a codefendant implicating the petitioner in that case was nonprejudicial for the reason that both defendants had made essentially the same statements. The reasoning of the decision in *Whitehorn* applies with more than equal force to the factual situation presented by the case at bench.

As stated in *Whitehorn, Aranda* is retroactive to the extent that it governs in "cases still pending on direct review," whereas *Bruton* must be applied "with full retroactivity without regard to time." However, assuming that the admission of Pollard's statements violated the law subsequently enunciated in *Bruton,* we hold that the error was harmless beyond a reasonable doubt. (*Chapman* v. *California* (1967) 386 U.S. 18, 23 [17 L.Ed.2d 705, 710, 87 S.Ct. 824, 24 A.L.R.3d 1065]; *Harrington* v. *California* (1969) 395 U.S. 250, 254 [23 L.Ed.2d 284, 287-288, 89 S.Ct. 1726]; *People* v. *Floyd* (1970) 1 Cal.3d 694, 721 [83 Cal.Rptr. 608, 464 P.2d 64]; *People* v. *Camarillo* (1968) 266 Cal.App.2d 523, 536 [72 Cal.Rptr. 296]; and *People* v. *McFadden* (1970) 4 Cal.App.3d 672, 685 [84 Cal.Rptr. 675].)

### (3) *The Voluntary Nature of Wade's Self-Incriminating Statements Was Properly Determined.*

■ The contention that the trial court erroneously failed independently to determine the issue whether Wade's self-incriminating statements were voluntary is specious and contradicted by the record. Before allowing evidence of the self-incriminating statements to the investgiating officers to be introduced into evidence, the trial court conducted *voir dire* proceedings in the absence of the jury for the express purpose of determining the admissibility of the statements. The court overruled the defense objections, stating in substance that the question of the voluntariness of the statements would next be determined by the jury. It is clear from the record that the court below followed the law requiring an independent determination of the voluntariness of the statements by both the trial judge and jury. (Cf. *People* v. *Bevins* (1960) 54 Cal.2d 71, 76-77 [4 Cal.Rptr. 504, 351 P.2d 776]; and *People* v. *Sanchez* (1967) 65 Cal.2d 814, 827 [56 Cal.Rptr. 648, 423 P.2d 800].)

Under the circumstances of the case at bench, we unhesitatingly declare our conviction that any error in admitting evidence of the extrajudicial statements of the defendants in this case was harmless beyond a reasonable doubt.

### (4) *There Was No Error in the Refusal of Instructions on Second Degree Murder.*

The contention that the trial court erroneously refused to instruct the jury on the law of second degree murder was rejected in our former opinion in *People* v. *Pollard, supra,* 194 Cal.App.2d 830. As we stated in that decision at page 835: "The evidence in the case at bar pointed overwhelmingly and indisputably to a homicide committed in the perpetration of a robbery. Under such a state of the record the trial court was not required to instruct the jury on the degrees of murder. The jury properly could have been advised that defendants either were innocent or were guilty of first degree murder. (*People* v. *Turville, supra,* 51 Cal.2d 620, 633 [335 P.2d 678]; *People* v. *Riser,* 47 Cal.2d 566, 581 [305 P.2d 1]; *People* v. *Rupp,* 41 Cal.2d 371, 382 [260 P.2d 1]; *People* v. *Sanford,* 33 Cal.2d 590, 595 [203 P.2d 534].)"

Our determination of this issue is supported by the more recent decisions in *People* v. *Beivelman* (1968) 70 Cal.2d 60, 73-74 [73 Cal.Rptr. 521, 447 P.2d 913]; *People* v. *Teale* (1965) 63 Cal.2d 178, 192 [45 Cal.Rptr. 729, 404 P.2d 209]; and *People* v. *Lessard* (1962) 58 Cal.2d 447, 453 [25 Cal.Rptr. 78, 375 P.2d 46].

### (5) *The Trial Court Correctly Instructed the Jury Concerning the People's Burden of Proof.*

Relying upon certain language in *People* v. *Redmond* (1969) 71 Cal.2d 745, 756 [79 Cal.Rptr. 529, 457 P.2d 321], quoting *People* v. *Hall* (1964) 62 Cal.2d 104, 112 [41 Cal.Rptr. 284, 396 P.2d 700], appellant contends that the trial court erroneously instructed the jury concerning the People's burden of proof. It is argued that the term "moral certainty" is fatally vague and that the trial court should have instructed the jury that proof to a "near certainty" is required. Appellant's reliance upon the cited decisions is misplaced.

It is conceded that the instructions given by the trial court were in complete conformity with the requirements of section 1096 of the Penal Code. We reject as frivolous the contention that section 1096 is unconstitutional and void for vagueness. We adopt the following language from *People* v. *Hughes* (1969) 268 Cal.App.2d 796, 800-801 [74 Cal.Rptr. 107], relating to the sufficiency of the trial court's "reasonable doubt" instructions, one of which was given in the language of Penal Code section 1096: "Although the giving of these instructions, in conjunction with each other, has been approved (*People* v. *Eggers* (1947) 30 Cal.2d 676, 688 [185 P.2d 1]. *People* v. *Kennelly* (1958) 166 Cal.App.2d 261, 263-264

[332 P.2d 733]), it is contended that they are 'not in accord with the standards laid down in *People* v. *Hall* (1964) 62 Cal.2d 104, 112 [41 Cal.Rptr. 284, 396 P.2d 700]; where Chief Justice Traynor stated, "To justify a criminal conviction, the trier of fact must be reasonably persuaded to a near certainty. The trier must therefore have reasonably rejected all that undermines confidence." ' We believe that proof 'beyond a reasonable doubt' and 'to a moral certainty' is the substantial equivalent of proof which reasonably persuades 'to a near certainty.' No intent is indicated by *People* v. *Hall* to impose a higher or different standard of proof in criminal actions than the widely accepted criteria embraced in the trial court's instructions. (See *People* v. *Tober* [(1966)] 241 Cal.App.2d 66, 72 [50 Cal.Rptr. 228].)"

As the court stated in *People* v. *Harris* (1969) 272 Cal.App.2d 833, 837 [77 Cal.Rptr. 745], "We have no intention of opening up any Pandora's Box or of loosening the fabric of Penal Code section 1096." (See also, *People* v. *Castro* (1945) 68 Cal.App.2d 491, 497 [157 P.2d 25].)

### (6) *The Trial Court Did Not Abuse Its Discretion in Denying Appellant's Motion for a New Trial.*

Finally, appellant contends that the trial court erred in denying his motion for a new trial made on the ground of newly discovered evidence. At the hearing on his motion for a new trial counsel for appellant was permitted to call to the stand the witness whose testimony constituted the "newly discovered" evidence relied upon as the ground for the motion. The testimony of said witness is summarized in appellant's brief as follows:

"Vedo Giovanni Vatelli testified that sometime towards the end of September, 1960, he sent a written message to Wade. In September or October of 1959, Vatelli was living at 1302 East 22nd Street. A Thomas Bush and another man came to his address at about 5 a.m. Bush asked him for permission to borrow the car. When Vatelli refused to loan it to him, he asked Vatelli to take him to Los Angeles. Vatelli refused, at which time Bush said, 'We just beat up some guy and we have got to get away from out here fast.' Bush had in his hand what appeared to be a police night-stick and was very nervous."

Vatelli could not remember the date of the occasion when Bush and the other unidentified man assertedly had come to his house. He testified that he saw no blood on the clothing or the person of either of these men during their five or ten-minute visit. It appears from the record that Vatelli was a friend of appellant and had been a fellow inmate in the county jail prior to the trial. Vatelli admitted three prior felony convictions, two for

burglary and one for forgery. At the time of the hearing on the motion he was in the county jail and was then on trial on a fourth felony charge.

There was no substantial showing sufficient to support a finding that this pitifully weak "evidence" was in fact newly discovered. Manifestly, the contention that the trial court abused its discretion in denying the new trial motion is frivolous. It would be a further waste of time and space to cite the numerous decisions supporting the elementary propositions that motions for a new trial on the ground of newly discovered evidence are looked upon with distrust and disfavor and that the ruling of the trial court on such a motion will not be disturbed on appeal unless there is a clear showing of an abuse of discretion.

The judgment is affirmed.

Roth, P. J., and Fleming, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 31, 1971. Mosk, J., did not participate therein.