[Crim. No. 6125. Third Dist. Feb. 29, 1972.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT LeBLANC, Defendant and Appellant.

## Counsel

Thomas H. Clarke, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler and James D. Garbolino, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

PIERCE, J.*—Defendant Robert LeBlanc (also known as Edward Walter Samuels) appeals from a judgment following a conviction of two counts of first degree robbery (violation of Pen. Code, § 211). Also since both robberies were committed by defendant while he was armed with a deadly weapon (a handgun), the offenses constituted a violation of Penal Code section 12022.5.†

We will hold that under the facts of this case the failure of the police to offer defendant an opportunity to have an attorney present at a lineup at which a victim identified defendant was not prejudicial error to the conviction for the first robbery. We will discuss other of defendant's contentions. None of them possess merit.

### The Facts

*First Robbery*

On July 17, 1970, Mrs. Louise Kendle was the victim of an armed robbery at her store in Sacramento. The robbery occurred at between 3:30 and 4 p.m. While Mrs. Kendle was standing at the cash register, the robber entered the store, pulled a handgun from his pants' waistband and stated, "Don't move. This is a stickup." Mrs. Kendle followed the robber's instructions to open the cash register. During that period the robber cocked his gun. He took approximately $200 which Mrs. Kendle had given him from the cash register. The victim was instructed to, and did, lie down on the floor. The robber left. Mrs. Kendle reported the robbery to the police. At their request she went to the police station and was asked to examine a book of mugshots. She was unable to make a definite identification from

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

†Proceedings before the jury under a plea of not guilty by reason of insanity to count one resulted in a verdict that defendant was sane.

that book. There is nothing in the record to indicate that the photographs she was shown included defendant's picture.

Subsequently, officers came to Mrs. Kendle's store. There she was shown a series of five snapshots among which was a picture of defendant. She identified him. These photographs are a part of the record. The men therein depicted are sufficiently alike to constitute the showing fair. (Cf. *People* v. *Pedercine* (1967) 256 Cal.App.2d 328 [63 Cal.Rptr. 873] (hg. den.).) Mrs. Kendle had seen defendant on other occasions than at the time of the robbery. He had been a customer earlier that day (and before that day). It appears from the record that the victim's sister (not called as a witness) had also seen defendant on one of the previous occasions.

Subsequently, Mrs. Kendle attended a police station lineup at which she identified defendant again as the robber. No evidence was submitted at the trial as to whether or not defendant had an attorney present at the lineup or whether he was offered an opportunity to be so represented and declined it. A photograph of the lineup is in evidence. Again, it was to all appearances fairly conducted.

There was no objection raised at the trial to the introduction into evidence of either the first photographs shown for identification, the photograph of the lineup, or the evidence relating to the same.

### The Second Robbery

At about 3:15 p.m., on August 1, 1970, in the Early Bird Market in Sacramento, the manager, a Mr. Louie, was in the meat department when a man entered and pointed a .22 caliber pistol at him, saying "Give me all the money." The victim gave the robber $40 in bills from a cabinet and about $30 in coins. An unknown source evidently called the police reporting that a robbery was in progress. In any event, two policemen entered the store and the robber was apprehended before he had completed his escape—although, as the officers went into the store, the robber walked past one of them and attempted to make good his escape by stating, "Everything's cool." The store manager notified the police to the contrary, stating: "Well, he's got the money." An officer then saw the robber's gun and the money; he was promptly arrested. Defendant was the robber. When the officers were placing defendant in the police car, defendant's afro style wig of an apparently unique type fell from his head. A female standby picked it up and ran off with it. It was never recovered.

Defendant testified. He denied the Kendle robbery and claimed an alibi (uncorroborated). He did not testify regarding the Early Bird Market robbery—except to assert that he owned a wig.

*Admission of the Evidence of*
*Identification was Proper*

■ Since *Wade* and *Gilbert* (*United States* v. *Wade* (1967) 388 U.S. 218 [18 L.Ed.2d 1149, 87 S.Ct. 1926]; *Gilbert* v. *California* (1967) 388 U.S. 263 [18 L.Ed.2d 1178, 87 S.Ct. 1951]), it has been an established rule that an accused must be informed of his right to be represented by an attorney at a lineup held for identification purposes. (If indigent, he has a right to the appointment of counsel.) It is usually a " 'critical stage of the prosecution.' " (*People* v. *Martin* (1970) 2 Cal.3d 822, 828 [87 Cal.Rptr. 709, 471 P.2d 29].)

Absence of an offer of counsel to an accused subjected to a lineup does not necessarily compel "the further conclusion that a defendant's trial was infected with fatal error." (*People* v. *Martin, supra,* at p. 830.) Sometimes an in-court identification will be deemed substantially tainted when it has been preceded by an identification in which the victim of a robbery has had his or her in-court identification bolstered by an identification made at an illegally held lineup. But the record may be such that a reviewing court can be satisfied that the in-court identification has been of an independent origin; also that there has been a purposeful failure to object by a defense trial attorney. Or that the absence of the attorney at the lineup was " 'harmless beyond a reasonable doubt' under the standard of *Chapman* v. *California* (1967) 386 U.S. 18 . . . . [Citation.]" (*People* v. *Martin, supra,* p. 831.)

■ Here the victim, Mrs. Kendle, did not recognize defendant merely from one incident, the robbery. The store was a small one. As we have stated, defendant had been a customer of the store before on several occasions, once before on the day of the robbery. The victim had particularly noticed him. She had been attracted to him by the oddity of his hair styling.

Secondly, Mrs. Kendle had seen him in her driveway (of her home located a few buildings from the store) one Sunday *after* the robbery. At the trial she described his particular style of dress (a white ruffled shirt and a pair of purple corduroy pants). She had called the police. Although on that occasion she had seen defendant headed for her store, he had disappeared by the time the police arrived.

Finally, the victim, in addition to the identification made by her at the lineup at the police station, had identified defendant's picture from among five photographs brought to her at her store for her inspection by two officers. She had unhesitantly selected defendant's picture and on the

back of it had written her name in full.[1] (Cf. *People* v. *Caruso* (1968) 68 Cal.2d 183 [65 Cal.Rptr. 336, 436 P.2d 336].)

Assuming, contrary to our holding, that the lineup was tainted by the absence of any offer to defendant to have his attorney present (if, indeed, this offer of an attorney was *not* made), the error was not prejudicial. The in-court identification was so positive and the source of such identification was so firmly based on sources other than the lineup that we cannot conceive that lineup, under the circumstances present here, contributed in any substantial degree to the conviction. (*Chapman* v. *California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710, 87 S.Ct. 824, 24 A.L.R.3d 1065]; see dicta *People* v. *Banks* (1970) 2 Cal.3d 127, 136 [84 Cal.Rptr. 367, 465 P.2d 263].)

In passing, we note that elsewhere in his brief defendant urged inadequate representation of defendant by the deputy public defender who was his attorney at the trial.

Inadequacy of representation, to be a ground of reversal, must show that the trial was thus reduced to a farce and a sham. (*People* v. *Ibarra* (1963) 60 Cal.2d 460 [34 Cal.Rptr. 863, 386 P.2d 487].) Involved in the omission to object in the matter now under discussion is a matter of trial strategy. The record indicates that defendant could have been identified not only by Mrs. Kendle but, as to a previous visit by defendant as a customer of the store, by the victim's sister. The latter was not called as a prosecution witness. A controversy raised regarding the lineup identi-

---

[1]Defendant discounts the value of this identification. One of the officers who presented the photographs to Mrs. Kendle stated: they were holding someone but could only keep him 24 hours. The pictures were presented to the victim separately and on showing her one he said: ". . . they can change over night." It is argued that Mrs. Kendle was being rushed into making a selection which she had been diffident about making. We do not so construe the conversation. When the officer said: ". . . they can change over night," he was showing Mrs. Kendle the picture of a man who was NOT defendant; thus, if anything, the suggestion was that she select another. It did not affect her decision. There is nothing in the record that gives any indication that the victim was being hurried into making a hasty identification. The record, on the contrary, indicates an unhesitant positive, correct identification at that time.

Defendant cites *People* v. *Lawrence* (1971) 4 Cal.3d 273 [93 Cal.Rptr. 204, 481 P.2d 212], and urges us to urge the California Supreme Court to overrule that recent decision. This we have neither the power nor the wish to do. That case did not involve a series of photographs shown the victim but photographs of a simulated lineup. A majority of our Supreme Court held that the *Wade-Gilbert* rule was inapplicable under the facts there extant. We have no quarrel with the *Lawrence* rule under the facts of the *Lawrence* case. Nor do we view the presentation of a series of single separate photographs to a victim to be comparable to the showing of a single simulated photograph of a lineup.

fication of the defendant could have induced the prosecution to produce the additional testimony. We deem that omission to object was tactical; that defense counsel preferred the record as it was rather than as it would have been had an objection been made.

## The Instructions Given Were Proper

The trial court gave the new CALJIC No. 2.90 (3d ed.), together with (former) CALJIC No. 22 (Rev.). The first tells the jury inter alia that in case the jury has a *reasonable* doubt whether the defendant's guilt is satisfactorily shown defendant is entitled to an acquittal; it says that the state has the burden of proving the defendant guilty beyond a reasonable doubt. Reasonable doubt is defined as "not a mere possible doubt; because everything relating to human affairs, and depending on moral evidence, is open to some possible or imaginary doubt." "Reasonable doubt," the instruction explains, is that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction, to a moral certainty, of the truth of the charge.

The court also gave CALJIC No. 22 (Rev.) which states that the law does not require demonstration or that degree of proof which, excluding all possibility of error, produces absolute certainty, for such degree of proof is rarely possible. Only that degree of proof is necessary which convinces the mind and directs and satisfies the conscience of those who are bound to act conscientiously upon it.

The foregoing instructions have long been approved. (*People* v. *Eggers* (1947) 30 Cal.2d 676, 688 [185 P.2d 1]; *People* v. *Kennelly* (1958) 166 Cal.App.2d 261, 264 [332 P.2d 733].) Generations of jurors have been given those same instructions, generations of defense lawyers have found fault and have been overruled. In *People* v. *Wade* (1971) 15 Cal.App.3d 16, 25 [92 Cal.Rptr. 750] (hg. den.) the latest reported attack against the language was answered by the court. This court finds no fault with the answer therein given.

## Defendant's Other Contentions

We will dispose of defendant's other contentions, all specious, which merit only brief discussion.

■ Penal Code section 211 refers to a "felonious taking" by means of "force *or* fear." (Italics ours.) The information pleaded both offenses here in the conjunctive. Defendant deems that was fatal to the validity of both counts because, as defendant defines force, the larcenous aiming

of a handgun at a victim accompanied by a demand (and receipt) of money is, according to him, not force. Defendant is mistaken. Correctly defined there was both "force" and inferably "fear." (*People* v. *James* (1963) 218 Cal.App.2d 166, 170 [32 Cal.Rptr. 283].)

The contention that there was no asportation adequate to take the second robbery out of the status of an "attempt" is based upon the use of a phrase in *People* v. *Masters* (1963) 219 Cal.App.2d 672, 680 [33 Cal.Rptr. 383] (applied in another context) and is answered both by the facts of this case, by *People* v. *Gibbs* (1970) 12 Cal.App.3d 526, 548 [90 Cal.Rptr. 866], and by *People* v. *Smith* (1963) 223 Cal.App.2d 431, 433 [36 Cal.Rptr. 165] (hg. den.).

The attack on the instructions relating to proof of the corpus delicti requires no answer. (But see Evid. Code, § 1240.)

### *Appellant was Afforded Adequate Representation by Counsel*

The record does not show that there was evidence available adequate to support a defense by defendant of diminished capacity under the *Wells-Gorshen* rule (33 Cal.2d 330; 51 Cal.2d 716) even if one had been raised. Defendant's own testimony was given. His defense was an alibi. No showing of inadequate representation was made. (*People* v. *Ibarra, supra,* 60 Cal.2d 460, 464; *People* v. *Reeves* (1966) 64 Cal.2d 766, 774 [51 Cal.Rptr. 691, 415 P.2d 35].)

No other contentions raised require discussion.

Judgment affirmed.

Richardson, P. J., and Janes, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 26, 1972.