469 So.2d 1291 (1984)
Abe LEWIS, Junior and Arthur James Blake aka "Arthur James Jackson"
v.
STATE.
2 Div. 391.
Court of Criminal Appeals of Alabama.
March 20, 1984.
Rehearing Denied May 8, 1984.
*1293 John E. Pilcher of Pilcher & Pilcher, Selma, for appellant Blake.
J. Patrick Cheshire, Selma, for appellant Lewis.
Charles A. Graddick, Atty. Gen., and Martha Gail Ingram, Asst. Atty. Gen., for appellee.
BOWEN, Presiding Judge.
Arthur James Blake and Abe Lewis, Junior were indicted for robbery in the first degree and, following a consolidated trial, convicted of robbery in the second degree. Each defendant was sentenced to twenty years' imprisonment and ordered to make restitution in the amount of $3,000.

I
Blake contends that he was denied his Sixth Amendment right to a speedy trial. The events pertinent to this issue are set forth below:
December 21, 1981Blake was arrested for first degree robbery.
January 6, 1982Blake posted $5,000 bail and was released.
January 28, 1982The grand jury indicted Blake and bail was set at $50,000.
February 2, 1982Blake was arrested under the indictment.
March 11, 1982The Honorable Blanchard McLeod was appointed to represent Blake at arraignment; trial was set for April 5, 1982. The trial court granted a continuance to the May 1982 docket requested by McLeod.
April 2, 1982McLeod filed a motion to withdraw as Blake's counsel. The court granted the motion and appointed Honorable John E. Pilcher to represent the defendant; trial was set for July 26, 1982.
July 26, 1982The State moved for a continuance because one of its witnesses was hospitalized; the court granted the continuance to November 1, 1982.
November 1, 1982Blake and the State's attorney announced "ready" for trial. Out of the presence of Blake's lawyer, counsel for one of Blake's co-defendants requested a continuance, which was granted. The assistant district attorney then moved for a continuance of Blake's trial on the ground that the State wanted to try the co-defendant before it tried Blake. The continuance was granted.
November 5, 1982Blake filed an objection to the continuance, a demand for speedy trial, and a motion to dismiss the indictment.
November 29, 1982After a hearing, the trial court denied Blake's motions but inquired when the State would be ready for trial. The prosecuting attorney informed the court that the State would be prepared to try Blake as soon as it completed the trial of the co-defendant.
January 10, 1983The State requested a continuance to the April 1983 docket in order to take advantage of A.R.Crim. P.Temp. 15.4 (effective March 1, 1983) (Joinder, consolidation, and severance of defendants), stating that it wished to try Blake and the two co-defendants together. Blake's counsel objected to the continuance in open court.
January 13, 1983Blake's counsel filed a written objection to the continuance and to the consolidation of the trials of all co-defendants, along with a motion for speedy trial.
January 21, 1983The trial court granted the State's request for continuance.
February 23, 1983The court conducted an evidentiary hearing on Blake's motions.
March 25, 1983The State filed a motion for consolidation of the trials of Blake and his two co-defendants.
March 30, 1983Blake objected to the proposed consolidation and requested a hearing.
April 4,1983The State requested a one-week continuance in order to comply with the requirements of Rule 15.4(b) (court may order consolidation no later than seven days prior to trial).

*1294 April 11, 1983The court entered an order of consolidation without a hearing. The State requested Blake's trial be continued due to an insufficient number of veniremen from which to strike a jury under Rule 15.4(h).
June 20, 1983Blake filed a petition for writ of habeas corpus alleging denial of his right to a speedy trial.
August 1, 1983The State requested a one-week continuance under Rule 15.4(b).
August 2, 1983The court conducted a hearing on the State's motion for consolidation and the defense objections, after which an order of consolidation was entered and trial scheduled for August 11, 1983.
August 11, 1983Blake was tried and convicted.
Applying the four-part test set out in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), we conclude that the defendant was not denied his constitutional right to a speedy trial.
Length of the DelayAlthough the interval between arrest and trial of approximately 19½ months may not be "presumptively prejudicial", see Barker v. Wingo, 407 U.S. at 530, 92 S.Ct. at 2192, it is excessive enough to provide "a sufficient springboard for inquiry into other factors", see Wade v. State, 381 So.2d 1057, 1059 (Ala.Cr.App.), cert. denied, 381 So.2d 1062 (Ala.1980) (quoting United States v. Edwards, 577 F.2d 883, 888 (5th Cir.1978), particularly in view of Blake's claim that the State "intentionally delayed (his trial) to gain some tactical advantage" over him, see United States v. Marion, 404 U.S. 307, 325, 92 S.Ct. 455, 466, 30 L.Ed.2d 468 (1971).
Reasons for the DelayThe initial delay between arrest and arraignment of nearly three months was not inordinately long, was not attributable to either the State or the defense, and was "made necessary by the law itself." Cook v. State, 333 So.2d 855, 858 (Ala.Cr.App.), cert. denied, 333 So.2d 858 (Ala.1976). Thereafter, the trial date was deferred by short postponements, including one continuance requested by Blake, one motion for withdrawal by defense counsel, and six continuances sought by the State.
The two-month delay occasioned by the continuance granted on Blake's behalf must, of course, be excluded from the total length of delay and counted against him. McCallum v. State, 407 So.2d 865, 868 (Ala.Cr.App.1981). On the other hand, the time lapse caused by defense counsel's motion for withdrawal must be considered a "neutral" reason; the record indicates that the motion was necessitated by the attorney's appointment to represent co-defendants in the same case.
In addition, a "neutral" reason can also be assigned to the three-month lag between July 26 and November 1, 1982. The State's motion for a continuance due to the hospitalization of a prosecution witness was appropriate and the delay was justifiable. See United States v. Sanchez, 392 F.Supp. 507 (S.D.N.Y.1974); Wade v. State, supra, at 1060. Thus, the ten-month delay from Blake's arrest until November 1, 1982, is chargeable either to Blake himself or to unavoidable "neutral" postponements. The fact that Blake did not assert his right to a speedy trial prior to November 1982, tends to suggest that he either acquiesced in the delays or suffered only minimal prejudice prior to that date. Stevens v. State, 418 So.2d 212, 214 (Ala.Cr.App.1982).
The nine and one-half month period after November 1982 presents an entirely different situation, however. Beginning with November 1, 1982, the State moved for the first of five continuances which prompted Blake's vigorous assertions of his right to a speedy trial.
The State's first request for a continuance was based on the prosecution's desire to try a co-defendant before Blake, gain a conviction and, no doubt, use the co-defendant's favorable testimony against Blake. This same prosecution strategy accounted for the trial delays in Barker v. Wingo. While we do not wish to be understood *1295 as interfering with the trial tactics of the prosecution or dictating to the State the order in which it must try its cases, we must point out that the State's continued insistence upon such a course of action in the face of repeated demands for a speedy trial by the defense may violate a defendant's Sixth Amendment rights. In Barker, the Supreme Court noted that "(p)erhaps some delay would have been permissible under ordinary circumstances, so that Manning could be utilized as a witness in Barker's trial, but more than four years was too long a period ...." 407 U.S. at 534, 92 S.Ct. at 2194.
The next four continuance motions by the State were grounded in its wish to take advantage of newly-promulgated Rule 15.4(b) of the Alabama Temporary Rules of Criminal Procedure, providing that separately indicted defendants may, under some circumstances, be joined for trial. Blake objected strenuously to the State's attempts at consolidation, pointing out to the trial court his opposition to the delays caused by the prosecution's shift in trial strategy. Again, while we cannot fault the prosecution for wishing to avail itself of a procedural rule which it supposes will provide a trial advantage, see Ex parte Cofer, 440 So.2d 1121, 1125 (Ala.1983), we caution the State that a defendant's constitutional rights rank ahead of both the strategy and the policy favoring joint trials. While "joint proceedings cannot be deemed an unjustifiable cause of delay", see People v. Powell, 40 Cal.App.3d 107, 152, 115 Cal. Rptr. 109, 138 (Cal.Dist.Ct.App.1974), a "deliberate attempt by the State to ... enhance its own case", Corn v. State, 387 So.2d 275, 278 (Ala.Cr.App.), cert. denied, 387 So.2d 280 (Ala.1980), weighs heavily against the prosecution under the Barker analysis. See Barker v. Wingo, 407 U.S. at 531, 92 S.Ct. at 2192.
The perhaps otherwise excusable delay occasioned by the State's attempt to consolidate the trials of all co-defendants in this case becomes particularly unjustified in view of the prosecution's failure to see that the orders it sought complied with Rule 15.4. The State found it necessary to request three continuances because it had been derelict in not observing the time limits of Rule 15.4 and because it had been negligent in not summoning the proper number of veniremen for a consolidated trial.
In short, we believe that the nine and one-half month delay after November 1982 must be attributed solely to the prosecution and must be weighed heavily against the State.
Defendant's Assertion of RightsAs we have outlined above, Blake did not voice a complaint during the ten-month delay following his arrest that can be attributed to himself or to "neutral" reasons. However, the nine and one-half month delay which we have attributed to the State was marked by Blake's vigorous assertion of his rights. Not only did he file a written objection to each postponement, but he also sought and was granted evidentiary hearings on his motions.
In accordance with Barker's admonition that we should weigh "the frequency and force of the objections (to delay) as opposed to attaching significant weight to a purely pro forma objection", 407 U.S. at 529, 92 S.Ct. at 2191, we find that Blake strenuously asserted his rights and we conclude that this factor should weigh in his favor.
Prejudice to the DefendantBlake testified that during the time he was awaiting trial his aunt, who allegedly could provide him with an alibi, died. Upon further questioning by the trial court, Blake admitted that he had "other witnesses ... that will be able to say exactly what she would have said if she were here." Nevertheless, at trial he called no witnesses. Blake also testified that his incarceration had caused an "economic drain" on his mother and siblings, yet the record reveals that they had other sources of income.
While we acknowledge the disadvantage to any accused who is incarcerated for eighteen months prior to trial, as pointed out in Barker, 407 U.S. at 532-33, 92 *1296 S.Ct. at 2192-93, we do not believe Blake has shown substantial prejudice.
Considering all four Barker factors together, we find this to be a close case, with the primary responsibility for half of the delay falling on the State in the face of strong assertions of defendant's rights. We conclude, however, that because the total delay attributable to the State was only nine and one-half months, and because Blake has shown no substantial prejudice, his Sixth Amendment rights have not been violated. Had the time factor been appreciably longer here, we would have no hesitation in finding a constitutional violation.

II
Blake maintains that the court's order consolidating his trial with that of co-defendant Lewis was untimely. Rule 15.4(b), A.R.Crim.P.Temp., requires the following:
"If defendants are charged in separate indictments, informations, or complaints, the court, on its own initiative or on motion of any party, may, no later than 7 days prior to trial, order that the defendants be joined for the purposes of trial ...." (Emphasis added.)
Although, as pointed out in Part I of this opinion, there were several motions for consolidation made and several trial dates set, the relevant dates here are August 2, 1983 (when the court ordered consolidation) and August 11, 1983 (when the trial actually began). The former was clearly seven days prior to the latter, and any other dates, including tentative and rescheduled trial dates, are immaterial. The consolidation order met the requirements of Rule 15.4(b).

III
Rule 15.4(h), A.R.Crim.P.Temp. (providing that when two or more defendants are tried jointly, "the district attorney shall strike first ...; then one defendant shall strike ...; then the district attorney...; then the next defendant"), supersedes Section 12-16-101, Code of Alabama 1975 (providing that when "two or more persons are tried jointly, the district attorney shall strike one, and each defendant shall have the right to strike off one name"), and is constitutional. Holsemback v. State, 443 So.2d 1371, 1377 (Ala.Cr.App.1983).

IV
Blake argues that the trial court violated Alabama Code Section 12-16-100 (1975, Supp.1983) by improperly reducing the number of veniremen appearing on the jury strike list. On the day of trial, the trial court qualified the venire and the attorneys conducted their voir dire examination. Following that, defense counsel objected because "it appears that each defendant would obtain nine strikes from the list and that the State would obtain nineteen." In response to that objection, the trial judge instructed the clerk to "Fix me a list with 48 jurors on it then. Take the first 48 jurors to strike from." Defense counsel then objected to the judge "reducing the venire."
Construing Section 12-16-100 before its 1982 amendment, our Supreme Court has held that it constitutes reversible error to require an accused to strike from a list of 24 jurors where the entire list of available jurors consisted of 38 names. Ex parte Lister, 418 So.2d 919 (Ala.1982). That section required the strike list to contain the names of "all the regular jurors empaneled for the week who are competent to try the defendant." That particular phrase was not retained in the 1982 amendment of Section 12-16-100, which provides that in "compiling the (strike) list or lists, names of qualified jurors may be omitted on a nonselective basis." This section also provides that "(t)he number of names appearing on the strike list upon commencement of striking, unless a lesser number is agreed to by the parties, shall not be ... less than 24 if the offense charged is a felony not punished capitally." In Lister, our Supreme Court made it clear that their holding did not apply to Section 12-16-100 as amended.
In our judgment, Blake was not harmed and has no cause to complain of error. *1297 Rule 15.4(h), A.R.Crim.P.Temp., entitled him to a list containing only thirty-six names, while the record reveals that the strike list for his trial had forty-eight names. The trial court, apparently acting on the presumption that a consolidated trial of two defendants required twice the number of veniremen listed in Section 12-16-100 for a single non-capital defendant, ordered forty-eight names on the list. Rule 15.4(h), however, provides the following:
"If two or more persons are being tried jointly, to the minimum number of names otherwise required for striking there shall be added 12 additional names for each additional defendant."
Thus, a consolidated trial involving two defendants requires twenty-four plus twelve, for a total of thirty-six, names on the strike list.

V
The trial court did not err in granting the State's challenges for cause to prospective jurors Carrie Pearl Smith and Maurice Henry. Mrs. Smith stated that she was Blake's third cousin, their parents being second cousins. Mr. Henry said that, although he did not know Blake personally, he knew him by sight, had given him rides, and was acquainted with his family. When asked by the court whether the acquaintance would influence him, Mr. Henry stated:
"Well, it might. I would rather not be on this because I know him and it might influence my, you know, make me take sides or something like that."
Mrs. Smith was disqualified from jury service by virtue of Section 12-16-150(4), Code of Alabama 1975, because she was "connected (with the defendant) by consanguinity within the ninth degree...." She and Blake were in fact related within the eighth degree of consanguinity. See Nolan Chart in Owen v. State, 255 Ala. 354, 355, 51 So.2d 541, 542 (1951).
Mr. Henry's answers are similar to those given by the challenged juror in Carter v. State, 420 So.2d 292, 295-96 (Ala.Cr.App. 1982). Our observation in that case applies here:
"(T)he trial judge was in a position to observe the demeanor and determine the prejudice of the venireman. The decision of a trial court to disqualify a juror on a challenge for cause is entitled to great weight and will not be disturbed on appeal unless clearly shown to be an abuse of discretion. Motes v. State, 356 So.2d 712 (Ala.Cr.App.), cert. denied, 356 So.2d 720 (Ala.1977). We do not find an abuse of discretion here."

VI
Lewis claims that the State improperly tried him as an accomplice when he was indicted as a principal. He relies on the repeal of Section 13-9-1, Code of Alabama 1975, which eliminated the distinction between principals and accessories, by Section 9901 of 1977 Ala.Acts No. 607 (Criminal Code). Former Section 13-9-1 provided:
"The distinction between an accessory before the fact and a principal, between principals in the first and second degrees, in cases of felony, is abolished; and all persons concerned in the commission of a felony, whether they directly commit the act constituting the offense or aid and abet in its commission, though not present, must hereafter be indicted, tried and punished as principals, as in the case of misdemeanors."
Although Section 13-9-1 has been repealed, there isfor purposes of indictment and trialstill no distinction between principals and accessories under Alabama law. See Alabama Code Sections 13A-2-20 and -23 (1975) (Commentary).

VII
Blake claims that the indictment was fatally defective in that it did not follow the Code form for robbery found in Section 15-8-150(86), Code of Alabama 1975, and it did not allege that the act was done "feloniously". The form of indictment set out by Section 15-8-150(86) followed the common law definition of robbery *1298 and is no longer applicable to robbery under Sections 13A-8-40-44 of the Criminal Code. As we stated in Smith v. State, 446 So.2d 68 (Ala.Cr.App.1984):
"When robbery was made a statutory offense, the test for the sufficiency of a robbery indictment was changed. The indictment is judged by the statutory language and elements instead of the former common law elements.... (T)he inclusion of the word `feloniously' was a requirement in the old common law form of indictment. It is not a part of the robbery statutes found in the Alabama Criminal Code."
(Citations omitted.) The indictment before us tracks the statutory language of robbery under the Criminal Code and is sufficient.

VIII
Pursuant to Section 13A-8-43(a)(1), the indictments charged that Lewis and Blake "use(d) force" to accomplish the robbery. They did not charge, in the alternative of Section 13A-8-43(a)(2), that defendants "threaten(ed) the imminent use of force" against the victim. The proof at trial established that defendants "pointed a pistol at (the victim) and told (him) to throw the bag on the ground."
Citing Moore v. State, 366 So.2d 1150 (Ala.Cr.App.1979), defendants insist that this evidence proved only a threat of force, did not conform to the indictment which charged the actual use of force, and entitled them to a judgment of acquittal.
Moore dealt with a prosecution for common law robberythe felonious taking of property from the victim by force or violence or by putting the victim in fear. There, the indictment charged the alternative "putting in fear" but not "force". The proof showed actual force. Our court observed the following:
"When the alternative to be found in the definition of robbery ... is used, it is not necessary to prove both actual force and fear as a means of wresting the possession of personal property from the person, or in the presence, of another.
When the alternative is not used, however, it necessarily follows that the proof must follow the allegation, whether the allegation charges actual force on the one hand or fear on the other. As it charged fear only, with actual force or violence conspicuous by its absence, ... (w)e think the trial court took the proper course in holding that there was not substantial evidence to support the averment as to fear, that there was a variance between the averment and the proof."

Moore v. State, 366 So.2d at 1153 (citations omitted).
While we entertain some doubt about the holding in Moore as applied to the alternative modes of committing statutory robbery, as opposed to common law robbery, we find Moore distinguishable on other grounds. In Moore, there was absolutely no evidence of the alternative "putting in fear" while the proof showed actual force. Here, contrary to defendants' claim that pointing the pistol amounted to a threat of force rather than the use of force, we find, as a matter of law, that brandishing the weapon constituted both the use of force and the threat of force. At least three other jurisdictions have determined, under similar statutes, that aiming a gun at the victim constitutes either the force or the intimidation required for robbery.
In United States v. Young, 304 F.Supp. 1027 (W.D.Pa.1969), the accused was charged with robbery by "force and violence" under an indictment based on 18 U.S.C. Section 2113(a). That section specifies "force and violence" or "intimidation" as alternate means of committing robbery. Against the defendants' contention that they could not be convicted under an indictment omitting "intimidation" when the proof showed that he directed a gun at the victim, the court held: "(A)s a matter of law, the pointing of the revolver, loaded or unloaded, constituted both force and violence under 18 U.S.C. Section 2113(a) 304 F.Supp. at 1030.
Similarly, the defendant in People v. Le-Blanc, 23 Cal.App.3d 902, 100 Cal.Rptr. 493 (1972), insisted that his pointing a pistol *1299 at the victim and demanding "Give me all the money", did not amount to the force required for robbery under Section 211 of the California Penal Code. Rejecting this contention, the court commented: "(A)s defendant defines force, the larcenous aiming of a handgun at a victim accompanied by a demand (and receipt) of money is, according to him, not force. Defendant is mistaken. Correctly defined there was both `force' and inferably `fear'." 23 Cal.App.3d at 908-09, 100 Cal.Rptr. 493.
The indictment in State v. Gordon, 321 A.2d 352 (Me.1974), alleged that defendant used "force and violence" against the robbery victim without alleging the alternative of putting the victim in fear. Nevertheless, the trial court instructed the jury as to the element of "putting in fear." Against defendant's contention that his conviction should be overturned because he used no force and violence to accomplish the robbery, and the "putting in fear" charge to the jury was erroneous, the Maine court determined the jury instruction to be harmless error. "(D)efendant's participation in the pointing of a firearm at Prout while defendant and Strode were taking Prout's automobile was unquestionably the use of `force and violence.'" 321 A.2d at 367.
Thus, there is authority for the proposition that the conduct Blake and Lewis displayed on the occasion in question constituted both a show of force and a threat of force. However, even if the proof at trial could be deemed to be at variance with the allegations of the indictment, we do not believe the variance was material.
"For a variance to be material, it must be misleading or substantially injurious to the accused in making his defense." Tyson v. State, 361 So.2d 1182, 1188 (Ala.Cr.App. 1978). As the Alabama Supreme Court observed in House v. State, 380 So.2d 940, 942-43 (Ala.1979):
"The policy behind the variance rule is that the accused should have sufficient notice to enable him to defend himself at trial on the crime for which he has been indicted and proof of a different crime or the same crime under a different set of facts deprives him of that notice to which he is constitutionally entitled."
Here, the indictment allegation that defendants were "armed with a deadly weapon, to wit: a pistol", provided Lewis and Blake with notice that the State intended to prove they accomplished robbery with a gun. Whether their brandishing the weapon constituted the "use" or the "threat" of force was a legaland not a factualquestion. Defendants were therefore not misled by any factual allegations in the indictment, in contrast to the accused in Hightower v. State, 443 So.2d 1272 (Ala.1983). In Hightower, our Supreme Court determined that the indictment may have led the accused to believe he would be required to defend a charge of sexual intercourse by forcible compulsion, whereas the State in fact proved that he obtained consent to the sexual act from the victim by fraud or artifice. As the court noted, the Hightower defendant was faced with proof "entirely different" from that which he could anticipate by reading the indictment.
In the case before us, not only did the indictment not mislead defendants to anticipate proof other than what was, in fact, offered, but also defendants had actual knowledge of the victim's testimony, via a hearing on motion to suppress, ten months prior to trial. (R. 9-26).

IX
Blake complains that the trial judge violated Rule 14, A.R.Crim.P.Temp., which states, "Opportunity shall be given to make the objection (to the court's oral charge) out of the hearing of the jury." At the conclusion of the oral charge, the following occurred:
"Are there any exceptions?
"MR. SULLIVAN (Assistant District Attorney): None, Your Honor.
"MR. PILCHER (Counsel for Defendant Blake): Your Honor, I do.
"THE COURT: Tell me what they are.
"MR. PILCHER: Your Honor, may I make them outside the presence of the jury?

*1300 "THE COURT: What is it that would be so prejudicial we can't take it up now?
"MR. PILCHER: Your Honor, I will go forward but I reserve an exception.
"THE COURT: All right, sir.
"MR. PILCHER: My objection is this. That the indictment has accused my client of robbery in the first degree and has stated that he used force. Now, the statute says that you either use force or you threaten the use of force. The indictment also says used force.
"THE COURT: Does this have to do with the charges?
"MR. PILCHER: Yes, sir. I object to that part of the charge that dealt with the threatening of force as it was not in the indictment; it was improper.
"THE COURT: All right. Anything else?
"MR. PILCHER: No, sir, Your Honor; the rest is fine; thank you."
Although we do not condone the trial court's violation of Rule 14, we do not believe the error is reversible. As the United States Supreme Court observed in Hamling v. United States, 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974), Rule 30 of the Federal Rules of Criminal Procedure (which is identical, in pertinent part, to Alabama Rule 14) was designed "to avoid the subtle psychological pressures upon the jurors which would arise if they were to view and hear defense counsel in a posture of apparent antagonism toward the judge." 418 U.S. at 134, 94 S.Ct. at 2916. Most courts confronted with violations of the federal rule have determined the error to be harmless unless the defendant was prejudiced by the court's failure to allow objections out of the jury's hearing. See Annot., 55 A.L.R.Fed. 726 (1981).
Viewing violations of Rule 51, A.R. Civ.P., the civil counterpart to Rule 14, the Alabama Supreme Court has determined the error to be nonprejudicial unless the instructions themselves were erroneous. Miller v. Dacovich, 355 So.2d 1109 (Ala. 1978); Beloit Corp. v. Harrell, 339 So.2d 992 (Ala.1976).
Under either standard, Blake was not harmed. The colloquy between defense counsel and the court, quoted above, illustrates no antagonism. We do not believe Blake's attorney was held in any less esteem by the jury following the objections he made in their presence. Further, the instructions themselves were not erroneous, since, as we have pointed out in part VIII, supra, the evidence pointed to both the defendants having used and having threatened force against the victim.
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.

ON REHEARING
BOWEN, Presiding Judge.
In connection with Issue III in our opinion, Lewis argues that A.R.Crim.P.Temp. 15.4 providing for the joinder, consolidation, and severance of defendants violates the provisions of Ala. Const, art. I, § 21 which states: "That no power of suspending laws shall be exercised except by the legislature." Whatever validity Lewis' argument had was destroyed by § 6.11 of Amendment No. 328 of the Alabama Constitution specifically granting our supreme court the constitutional power and authority to "make and promulgate rules governing the administration of all courts and rules governing practice and procedure in all courts." Holsemback v. State, 443 So.2d 1371, 1374 (Ala.Cr.App.1983). "The general proposition is everywhere recognized that the Legislature cannot delegate its legislative powers, save as authorized by the Constitution itself." In re Opinions of the Justices, 232 Ala. 56, 58, 166 So. 706 (1936) (emphasis added).
OPINION EXTENDED; APPLICATION FOR REHEARING OVERRULED.
All Judges concur.